Tarrance CHAMPLAIE, Plaintiff,

v.

**BAC HOME LOANS SERVICING, LP, et al., Defendants.**

Civ. No. S–09–1316 LKK/DAD.

United States District Court, E.D. California.

Oct. 22, 2009.

Margaret Mary Broussard, Law Office of Margaret M. Broussard, Antelope, CA, Jonathan Gregg Stein, Law Offices of Jonathan G. Stein, Elk Grove, CA, for Plaintiff.

David Nathan De Ruig, Bryan Cave LLP, San Francisco, CA, for Defendants.

## ORDER

LAWRENCE K. KARLTON, Senior District Judge.

This case concerns plaintiff's mortgage and the potential foreclosure premised on an asserted default. Plaintiff's first amended complaint ("FAC") names eight defendants and ten causes of action, many of which incorporate multiple theories of liability. Four defendants have moved to dismiss all claims against them, and to strike portions of the FAC.

Stepping back from the multitude of particular arguments, defendants' primary challenge is that plaintiff fails to provide the notice as to the basis of his claims that is required by the Supreme Court's recent decisions in *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) and *Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Defendants' motion therefore com-

pels the court to discuss these two cases in the context of the foreclosure cases currently flooding the district courts. As explained below, the court concludes that in numerous ways, plaintiff's complaint falls short of these requirements established by those cases.

A second broad issue is plaintiff's attempt to cure these deficiencies in his opposition memorandum. Many claims in the complaint are mere blanket allegations of wrongdoing. Plaintiff's opposition attempts to salvage these claims by connecting them to factual allegations in ways not made clear by the complaint, and by alleging altogether new facts. New factual allegations are disregarded in this order. While post-hoc explanations of the claims' bases are also insufficient, the court discusses what would result from including these explanations in an amended complaint to the extent that the parties' briefing permits the court to do so. Plaintiff's counsel has filed essentially the same complaint in over two dozen cases in this district, and similar memoranda in opposition to motions to dismiss in each case. Most, if not all, of these cases are shambling through a slow process of curing the complaints' many deficiencies. Where parties in this case have briefed issues likely to be raised in an amended complaint, the court finds that a discussion of those issue serves the interests of the parties and the court.

The court resolves these motions on the papers and after oral argument. For the reasons stated below, defendants' motion to dismiss are granted in part and denied in part, and the motion to strike is denied.

## I. STANDARDS [1]

### A. Standard for a Motion to Dismiss under Fed.R.Civ.P. 12(b)(6)

A Fed.R.Civ.P. 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. In general, these requirements are established by Fed.R.Civ.P. 8, although claims that "sound[ ] in" fraud or mistake must meet the requirements provided by Fed.R.Civ.P. 9(b). *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1103–04 (9th Cir.2003).

#### 1. Dismissal of Claims Governed by Fed.R.Civ.P. 8

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations. *Iqbal*, 129 S.Ct. at 1950. "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. *Id.* at 1949–50. *Iqbal* and *Twombly* therefore proscribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." *Id.*; *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d.1081 (2007).[2]

---

1. In this case, where the parties' primary dispute is whether the allegations contained in the complaint are conclusory, the court finds it appropriate to discuss the standards by which the court evaluates these allegations before turning to the allegations themselves.

2. As discussed below, the court may consider certain limited evidence on a motion to dis-

■ "Plausibility," as it is used in *Twombly* and *Iqbal,* does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988).

The line between non-conclusory and conclusory allegations is not always clear. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). While *Twombly* was not the first case that directed the district courts to disregard "conclusory" allegations, the court turns to *Iqbal* and *Twombly* for indications of the Supreme Court's current understanding of the term. In *Twombly,* the Court found the naked allegation that "defendants 'ha[d] entered into a contract, combination or conspiracy to prevent competitive entry ... and ha[d] agreed not to compete with one another,'" absent any supporting allegation of under-lying details, to be a conclusory statement of the elements of an anti-trust claim. *Id.* at 1950 (quoting *Twombly,* 550 U.S. at 551, 127 S.Ct. 1955). In contrast, the *Twombly* plaintiffs' allegations of "parallel conduct" were not conclusory, because plaintiffs had alleged specific acts argued to constitute parallel conduct. *Twombly,* 550 U.S. at 550–51, 556, 127 S.Ct. 1955.

*Twombly* also illustrated the second, "plausibility" step of the analysis by providing an example of a complaint that failed and a complaint that satisfied this step. The complaint at issue in *Twombly* failed. While the *Twombly* plaintiffs' allegations regarding parallel conduct were non-conclusory, they failed to support a plausible claim. *Id.* at 566, 127 S.Ct. 1955. Because parallel conduct was said to be ordinarily expected to arise without a prohibited agreement, an allegation of parallel conduct was insufficient to support the inference that a prohibited agreement existed. *Id.* Absent such an agreement, plaintiffs were not entitled to relief. *Id.*[3]

In contrast, *Twombly* held that the model pleading for negligence demonstrated the type of pleading that satisfies Rule 8. *Id.* at 565 n. 10, 127 S.Ct. 1955. This form provides "On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway." Form 9, Complaint for Negligence, Forms App., Fed. Rules Civ. Proc., 28 U.S.C.App., p. 829. These allegations adequately "'state[ ] ... circumstances, occurrences,

---

miss. As an exception to the general rule that non-conclusory factual allegations must be accepted as true on a motion to dismiss, the court need not accept allegations as true when they are contradicted by this evidence. *See Mullis v. United States Bankr. Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987), *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987).

**3.** This judge must confess that it does not appear self-evident that parallel conduct is to be expected in all circumstances and thus would seem to require evidence. Of course, the Supreme Court has spoken and thus this court's own uncertainty needs only be noted, but cannot form the basis of a ruling.

and events in support of the claim presented.'" *Twombly*, 550 U.S. at 556 n. 3, 127 S.Ct. 1955 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, at 94, 95 (3d ed.2004)). The factual allegations that defendant drove at a certain time and hit plaintiff render plausible the conclusion that defendant drove negligently.

### 2. Dismissal of Claims Governed by Fed.R.Civ.P. 9(b)

A Rule 12(b)(6) motion to dismiss may also challenge a complaint's compliance with Fed.R.Civ.P. 9(b). *See Vess*, 317 F.3d at 1107. This rule provides that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." These circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" *Id.* at 765 (quoting *Moore v. Kayport Package Express*, 885 F.2d 531, 541 (9th Cir.1989)). Claims subject to Rule 9(b) must also satisfy the ordinary requirements of Rule 8.

### B. Standard for a Motion to Strike under Fed.R.Civ.P. 12(f)

Rule 12(f) authorizes the court to order stricken from any pleading "any redundant, immaterial, impertinent, or scandalous matter." A party may bring on a motion to strike within 20 days after the filing of the pleading under attack. The court, however, may make appropriate orders to strike under the rule at any time on its own initiative. Thus, the court may consider and grant an untimely motion to strike where it is proper to do so. *See* 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d* § 1380.

Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties. *Id.; see also Hanna v. Lane*, 610 F.Supp. 32, 34 (N.D.Ill.1985). If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits. *See* 5A Wright & Miller, *supra*, at § 1380.

## II. BACKGROUND

### A. Exhibits

The parties' filings in connection with the motion have included numerous exhibits. There are three types of evidence which a court may properly consider on a motion to dismiss. The first consists of exhibits attached to the complaint. No such exhibits are present here. The second is evidence subject to judicial notice under Fed.R.Evid. 201. Exhibits B, D, E, F, G, H, and I to Defendants' Request for Judicial Notice ("Defs.' RFJN") are all publicly recorded documents as to which judicial notice is proper. Respectively, these documents are the Deed of Trust; the May 29, 2008 Notice of Default; the September 5, 2008 Notice of Trustee's Sale; the October 29, 2008 Trustee's Deed Upon Sale; the Notice of Rescission of Trustee's Deed Upon Sale; the March 26, 2009 Notice of Trustee's Sale; and the Substitution of Trustee.

The third type of evidence a court may consider consists of "documents

whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994), *overruled on other grounds by Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1124 (9th Cir.2002). This rule serves to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based." *Swartz,* 476 F.3d at 763 (internal quotation and modification omitted).

█ The *Branch* rule encompasses several documents as to which the parties seek judicial notice, but for which judicial notice is improper because the documents are not publicly recorded or otherwise verifiable. Exhibit A to Defs.' RFJN is the promissory note for plaintiff's loan. This document is extensively referenced by the FAC. Defendants also ask the court to consider a "Truth in Lending Disclosure Statement" and "Mortgage Insurance Disclosure." Defs.' RFJN Ex. C; Defendant's Supplemental Request for Judicial Notice, Ex. J. While the FAC does not refer to either of these documents by name, the FAC repeatedly refers to "documents" provided to plaintiff at closing, *see, e.g.,* FAC ¶¶ 27, 29, and to various disclosures, *see, e.g.,* FAC ¶ 62. The first exhibit to plaintiff's request for judicial notice, a monthly statement sent by CHL dated March 1, 2009, is similarly referred to by the complaint. Thus, these four documents' contents are alleged in the complaint. Neither party has questioned the authenticity of any of these four documents. Notably, plaintiff's opposition memo cites to, and affirmatively relies upon, the exhibits offered by defendant, demonstrating that plaintiff agrees that these exhibits are authentic. The court may therefore consider these documents without transforming the motion into a motion for summary judgment.

The court cannot consider the second exhibit to plaintiff's request for judicial notice. This exhibit is an article purporting to describe defendant MERS in general. It is neither judicially noticeable nor the type of evidence contemplated by *Branch,* and is therefore ignored.

## B. Plaintiff's Loan and Mortgage [4]

In April of 2007, Jake Weathers, a loan officer employed by Ron Allen & Associates Real Estate, solicited plaintiff to enter a loan transaction. FAC ¶ 23. Weathers advised plaintiff that Weathers could secure the "best deal" and "best interest rates" available, that loan payments would be "approximately $1600 per month," and that the loan could be refinanced if the payments became unaffordable. FAC ¶¶ 25, 26, 28. After this solicitation, plaintiff retained "Ron Allen & Associates Real Estate, Ronnie D Allen, and Jake Weathers as his agents for the purpose of obtaining a loan to finance the property." FAC ¶ 93. Plaintiff names Ron Allen & Associates Real Estate and Ronnie D Allen as defendants in this suit, but these defendants are not parties to the instant motion. Jake Weathers was named as a defendant in the initial complaint, but has been dismissed by plaintiff in the FAC, in light of a bankruptcy filing by Weathers. FAC ¶ 13.

Plaintiff completed the loan transaction between July 25 and August 3, 2007. FAC ¶ 31. In so doing, plaintiff signed four documents: the promissory note, the deed of trust, the "Truth in Lending Disclosure Statement," and the "Mortgage Insurance Disclosure." Defs.' RFJN Ex. A, B, C, J. The promissory note states that plaintiff borrowed $256,500.00 in principal from defendant Countrywide Home Loans, Inc., d/b/a America's Wholesale Lender

---

4. Many of the following facts are drawn from the FAC. Unless otherwise noted, the court assumes, for the purposes of this motion only, that the facts alleged in the FAC are true.

("CHL"). Defs.' RFJN Ex. A. The note specifies that plaintiff's "monthly payment will be in the amount of $1,859.90." *Id.* The note is dated July 25, 2007. *Id.*

The deed of trust identifies defendant CHL as the lender and defendant Recon-Trust Company, N.A. ("ReconTrust") as a trustee. Defs.' RFJN Ex. B, 2; *see also* FAC ¶ 31. The deed further identifies defendant Mortgage Electronic Registration Systems ("MERS") as the beneficiary to the trust, "acting solely as nominee for" the lender and the lender's successors and assigns. Defs.' RFJN Ex. B, 2. The deed of trust obliges plaintiff to secure, and pay the premiums for, "mortgage insurance" in addition to the obligation to pay the loan. *Id.* at 8–10. The deed is dated July 25, 2007, was signed and notarized July 26, 2007, and was recorded on August 3, 2007. *Id.* at 1, 16.

The "Truth in Lending Disclosure Statement" is signed by plaintiff and dated July 26, 2007. Defs.' RFJN Ex. C. This document states that the "amount financed" is $254.856.96 and that the "annual percentage rate" is 9.527 percent. It identifies the loan as a fixed rate 30 year loan, and specifies the monthly payments plaintiff will be obliged to make, inclusive of the amount paid for the mandatory mortgage insurance. The disclosure states that plaintiff will make 153 payments of $2,246.69, followed by 206 payments of $1,859.80, and one payment at $1,864.24. The "Mortgage Insurance Disclosure" explains that the decrease in the monthly payment obligation occurs because the mortgage insurance will terminate when the borrower has repaid a certain fraction of the loan. *See* Defs.' Supplemental RFJN Ex. J, 3–4 (explaining various triggers for cancellation of plaintiff's mortgage insurance).

Plaintiff concedes that he received the above documents, notwithstanding the FAC's allegation that "When the loan was consummated, Plaintiff did not receive the required disclosures including, but not limited to[,] the TILA disclosure and the required number of copies of the Notice of Right to Cancel stating the date that the rescission period expires." FAC ¶ 40. Elsewhere in the FAC, plaintiff alleges that he did receive some "loan documents," but that he was prevented from reviewing these documents because he did not receive them prior to closing, and that at closing, he was given only a few minutes to sign the various documents, with no explanation as to what they were, and without an opportunity to review them. FAC ¶ 27. In opposing this motion, plaintiff retreats from the former allegation (that he did not receive the disclosures at all), and rests his argument on the latter.[5] Amended Opp'n, 8. In light of the position taken by plaintiff in his opposition, and the fact that plaintiff signed the Truth in Lending Disclosure Statement and Mortgage Insurance Disclosure, the court rejects the allegation that these documents were not provided, but the court assumes to be true the alternative allegation that these documents were disclosed late in the process and with minimal opportunity for review.

---

5. Moreover, plaintiff explicitly relies on the Truth in Lending Disclosure Statement to argue that the disclosures were inadequate. Specifically, plaintiff argues that the disclosure is internally inconsistent, because it states both that plaintiff has a fixed rate loan and that the monthly obligation will change at two points. As explained above, the first change in payments was adequately explained to be due to the termination of mortgage insurance, such that plaintiff would no longer be obliged to pay insurance premiums. The second change, in the amount due on the final payment, is simply due to the fact that the total obligation is not divided into perfectly equal monthly payments. Plaintiff's allegation that the Truth in Lending Disclosure Statement itself reveals that the loan was other than a fixed rate loan is therefore without merit.

■ As note above, plaintiff also alleges that he never received any disclosures related to his right to rescind the loan. FAC ¶ 40, *see also, e.g.*, FAC ¶¶ 56–58, 64, 68. Because plaintiff's loan is a "residential mortgage transaction" as defined in 15 U.S.C. § 1602(w), plaintiff had no right to rescind the loan under the Truth in Lending Act ("TILA"), and no disclosures regarding rescission were required. 15 U.S.C. § 1635(e)(1). Plaintiff concedes this point. Amended Opp'n at 10. Because plaintiff had no right to rescind, the allegation that defendants did not inform plaintiff that he had a right to rescind is irrelevant.[6]

In a final allegation relating to the initial transaction, plaintiff alleges that because he was prevented from reviewing loan documents prior to closing, plaintiff did not discover that Weathers has falsified plaintiff's loan application by inflating plaintiff's monthly income. FAC ¶ 27. CHL allegedly "negligently failed to discover" this inaccuracy. *Id.*

## C. Events After Initiation of Plaintiff's Loan

Plaintiff has not alleged how defendant BAC Home Loans Servicing, f/k/a Countrywide Home Loans Servicing, ("BAC") became involved in plaintiff's loan, and the parties' exhibits do not explicitly address BAC's role. It appears, however, that BAC became the "servicer" of plaintiff's loan after the transaction was completed.

Plaintiff alleges that when he began making payments on the loan, the monthly obligation "turned out to be" over $2,600, increasing to over $2,900 per month by March 2009. FAC ¶ 26, *see also* Pl.'s RFJN Ex. 1 (bill showing payment due for March 1, 2009 as $2,979.37). Plaintiff alleges that this increase demonstrates that either the initial disclosures did not reflect the loan actually sold to plaintiff, or alternatively that the initial disclosures were correct but that defendants have breached their terms.

At some point after the loan was initiated, plaintiff failed to make the payments required of him. Defendant ReconTrust, the trustee under the deed of trust, initiated a nonjudicial foreclosure. *See* Cal. Civ. Code § 2924. ReconTrust issued a Notice of Default on the loan, which was recorded on May 29, 2008. FAC ¶ 43, Defs.' RFJN Ex. D. This notice stated that plaintiff was $18,587.76 behind on his payments. ReconTrust executed a Notice of Trustee's Sale, the next step in the non-judicial foreclosure process, and recorded this notice on September 5, 2008.[7] FAC ¶ 44, Defs.' RFJN Ex. E. ReconTrust then foreclosed

---

6. Accordingly, although plaintiff's FAC explicitly states a TILA claim for rescission, this claim is meritless, has been abandoned, and is not further discussed by the court. In plaintiff's amended opposition, he argues that he is separately entitled to rescission under a state law theory. The FAC, in enumerating the remedies sought under the various claims, does not list rescission as a remedy for any claim other than the TILA claim. In light of the sprawling, "shotgun" nature of the claims actually included in the FAC, the court declines to speculate on the potential validity of claims plaintiff has not alleged, including a claim for rescission under state law. As discussed below, plaintiff is granted leave to amend the complaint. Plaintiff's amendment may allege a theory for rescission under state law if consistent with his allegation of facts.

7. Plaintiff alleges that after this initial notice of trustee's sale was recorded, plaintiff engaged "Defendant Brett Roberts who represented himself as working for Defendant Planned Resources, a foreclosure rescue company," in an effort to halt foreclosure. FAC ¶ 45. This effort was apparently unsuccessful, and does not appear to be relevant to the motions under consideration.

It is unclear whether plaintiff intends for Brett Roberts and Planned Resources to be defendants in this suit. Plaintiff named both as defendants in the caption to plaintiff's original complaint, but plaintiff omitted their

on the property on October 23, 2008, selling the property to the Federal National Mortgage Association. Defs.' RFJN Ex. F; *see also* FAC ¶ 46 (alleging that foreclosure occurred "on or about October 26, 2008").

ReconTrust rescinded this foreclosure sale roughly three weeks later, on November 12, 2008, and thereby returned the property to plaintiff. FAC ¶ 46. The stated purpose of this rescission was a "failure to communicate timely[ ] notice of conditions." Defs.' RFJN Ex. G. Plaintiff alleges that no further notice of default or notice of trustee sale was executed. However, the judicially noticeable exhibits demonstrate that a second Notice of Trustee's Sale was recorded on March 26, 2009. Defs.' RFJN Ex. H. Although this second Notice of Trustee's Sale stated that the property would be sold on April 14, 2009, no evidence or allegation indicates that a second sale occurred.

Plaintiff alleges that throughout this time, various communications and misrepresentations were directed to plaintiff by various defendants. Many of these allegations, however, are conclusory. Plaintiff alleges that "Defendants misrepresented material facts with the intent of forcing Plaintiff to either pay large sums of money to the Defendants, to which they were not entitled, or to abandon the Property to a foreclosure sale, resulting in profit for the Defendants." FAC ¶ 51. This allegation fails to identify any "occurrences" or "events," *Twombly*, 550 U.S. at 556 n. 3, 127 S.Ct. 1955, including which defendant made the representations, when, or the content of the representation.[8] This allegation is therefore conclusory, and the court does not discuss it further.

Plaintiff sent a letter to defendant BAC on April 9, 2009, requesting rescission of the loan under TILA. FAC ¶ 33. Plaintiff alleges that this letter constituted a "qualified written request" under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"). A "qualified written request" is a request "for information relating to the servicing of [federally regulated mortgage loans]." 12 U.S.C. § 2605(e)(1)(A). The allegation that plaintiff's letter constituted a qualified written request is conclusory, and plaintiff has not alleged that this letter, in addition to seeking to rescind the loan, requested information related to servicing. *See MorEquity Inc. v. Naeem*, 118 F.Supp.2d 885, 901 (N.D.Ill.2000).[9]

### D. Secondary Mortgage Markets, Securitization, and Assignment of Plaintiff's Loan

Plaintiff also makes numerous assertions concerning the mortgage lending industry

---

names in the caption to the FAC. Similarly, these individuals are not discussed in the "Parties" section of the FAC. FAC ¶¶ 7–16. The court therefore assumes that references to these individuals as "defendants" are in error.

8. In plaintiff's opposition memorandum, plaintiff alleges that BAC made misrepresentations in phone calls and letters to plaintiff "immediately after Plaintiff defaulted." Amended Opp'n at 11. While plaintiff's opposition cites paragraph 51 of the FAC in purported support of this assertion, that paragraph, as discussed above, makes no such allegation. As discussed below, plaintiff is granted leave to file a second amended complaint, and the court does not find it appropriate to speculate as to the effect of allegations that plaintiff may add through such an amendment.

9. Plaintiff's amended opposition states that plaintiff's letter also requested "documents relating to the servicing of Plaintiff's loan ... and a statement of the reasons for Plaintiff's belief that his loan is in error." Amended Opp'n, 15. Again, the issue tendered by the motion addresses the present state of the pleadings, not what an amended complaint might state.

generally rather than conduct specific to this case. Plaintiff's FAC and opposition decry the practice of selling mortgages on secondary markets, and in particular the practice of securitizing mortgages. Plaintiff alleges that MERS was created to circumvent laws that would limit these practices. FAC ¶ 19. Plaintiff separately alleges that lenders lowered underwriting standards to fuel the secondary market. FAC ¶ 21. The relevance of these allegations has not been explained.

Here, defendants did not acquire plaintiff's loan through the secondary market. According to plaintiff's own allegations, CHL, MERS, and ReconTrust were the parties to the original transaction, although plaintiff alleges that MERS was not entitled to act as such. FAC ¶¶ 31, 32, 38. The exhibits considered by the court confirm that these three defendants were party to the original transaction. *See, e.g.,* Defs.' RFJN Ex. B. Notwithstanding these allegations, Plaintiff alleges without further explanation that "[n]o interest in the Mortgage Note, Deed of Trust, or Property was ever legally transferred to any of the Defendants," because defendants "failed to follow the basic legal requirements for the transfer of a negotiable instrument and an interest in real property," and that as a result "Defendants are in effect legal strangers to this contractual transaction." FAC ¶¶ 19, 20. The court cannot countenance these latter allegations insofar as they imply that defendants' interests were acquired only by assignment from entities other than plaintiff, because this implication is contradicted by the exhibits considered by the court, the position taken by plaintiff in opposition to this mo-

tion, and by plaintiff's factual allegations as to the role of the parties.[10]

Separate from the allegation that the loan was assigned *to* defendants, plaintiff alleges that defendants have assigned the loan to other parties. Plaintiff alleges that "Defendants sold ... Plaintiff['s] home loan ... to other financial entities," and that as a result, "Defendants do not own the loan subject to this action [sic] and are not entitled to enforce the security interest." FAC ¶ 34.[11] Plaintiff's allegation that defendants "are not entitled to enforce the security interest" is a legal conclusion not entitled to an assumption of truth. The exhibits establish that neither MERS nor ReconTrust have assigned or transferred their interests and obligations under the deed of trust, and plaintiff has not alleged that any such assignment or transfer as to the deed of trust has occurred. *Associated General Contractors v. Cal. State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (courts shall not assume that plaintiffs may prove facts they have not alleged). Because the exhibits do not speak to whether CHL has assigned the beneficial interest under the promissory note, and because plaintiff alleges that this note was transferred, the court must at this stage assume this allegation to be true.

### E. MERS

Plaintiff's remaining factual allegations concern challenges to three aspects of MERS's operation. First, he alleges that the practice of designating MERS as the nominee for the real party in interest on a deed of trust has the purpose and effect of subverting state recording and notice re-

---

**10.** While it is true that the federal rules tolerate contradictory allegations, the present complaint cannot reasonably be construed as such a pleading. *See Coleman v. Std. Life Ins. Co.,* 288 F.Supp.2d 1116, 1119 (E.D.Cal. 2003).

**11.** However, as noted above, plaintiff also alleges that all attempted assignments suffered procedural defects and were therefore ineffective. FAC ¶ 19. The court assumes that the allegation of defects (which is itself a legal conclusion) is brought in the alternative.

quirements. FAC ¶¶ 19, 32. This allegation is invoked only to support plaintiff's "produce the note" argument, and is not otherwise explained or supported by factual allegations. Second, plaintiff alleges that MERS is not licensed to conduct business in California. FAC ¶ 32. Third, plaintiff alleges that MERS's own "terms and conditions" prohibit MERS from asserting rights to mortgaged properties, FAC ¶ 10, and that this prohibits MERS from foreclosing on properties, FAC ¶¶ 11, 32.

## III. ANALYSIS

### A. Preliminary Issues

#### 1. Preemption of Plaintiff's State Law Claims

The extent to which federal law preempts state law claims relating to mortgage lending is unclear. TILA includes a broad "savings clause" that limits TILA's preemptive effect. 15 U.S.C. § 1610. However, the Office of Thrift Supervision has promulgated a regulation under the Home Owners Loan Act, 12 U.S.C. § 1461 that purports to preempt "the entire field of lending regulation for federal savings associations." 12 C.F.R. § 560.2(a). The Ninth Circuit upheld this regulation in *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir.2008). In *Silvas*, plaintiffs brought claims under California's Unfair Competition Law, Cal. Bus. and Prof.Code section 17200 *et seq.*, ("UCL") arguing that defendant had advertised that certain payments where nonrefundable when TILA required that defendant make a refund available. *Silvas*, 514 F.3d at 1003. The panel held that plaintiffs' claims were preempted by the OTS's HOLA regulation. *Id.* at 1005 (citing 12 C.F.R. § 560.2). This result was based on the conclusion that plaintiffs sought to use the UCL to directly regulate credit activities. *Id.* at 1006 (applying 12 C.F.R. § 560.2(b)). The panel then stated

that while it "[did] not reach the question" of whether plaintiffs' application of the UCL would be preempted as a law that only incidentally affected credit activities, but that if the panel were to reach the question, it would hold that the UCL was preempted insofar as it provided a longer statute of limitations than TILA. *Id.* at 1006–07, 1007 n. 3.

District courts have differed in their application of *Silvas* to subsequent foreclosure cases. Several courts have read *Silvas* to have held that numerous state law claims were preempted in their entirety. *Naulty v. Greenpoint Mortg. Funding, Inc.*, No. C 09–1542, 2009 WL 2870620, *3–4, 2009 U.S. Dist. LEXIS 79250, *10–*12 (N.D.Cal. Sept. 2, 2009) (Patel, J.), *Kelley v. Mortgage Elec. Registration Sys.*, 642 F.Supp.2d 1048, 1054 (N.D.Cal.2009) (Ikuta, J.). Others have read *Silvas* for the narrow proposition that the UCL may not be used to extend TILA's statute of limitations. *Santos v. Countrywide Home Loans*, 2009 WL 2500710, 2009 U.S. Dist. LEXIS 71736 (E.D.Cal. Aug. 14, 2009) (Ishii, J.).

In this case, defendants cite *Silvas* solely for the proposition that the UCL may not be used to extend TILA's statute of limitations—that is, that if the UCL claim is predicated upon a violation of TILA, the UCL claim must be brought within TILA's limitations period. *Silvas* spoke to this specific issue in detail. *Silvas*, 514 F.3d at 1007 n. 3. While this discussion is explicitly demarcated as dicta, it is dicta that this court does not disregard lightly. *See United States v. Montero–Camargo*, 208 F.3d 1122, 1133 n. 17 (9th Cir.2000) (discussing the weight accorded to dicta of a reviewing court). There being no adverse reasoning, the court follows *Silvas* on this issue.

Because preemption is largely a defense, and because defendants have only invoked

preemption on the above issue, the court does not discuss whether plaintiff's state law claims are otherwise preempted. *See Moore–Thomas v. Alaska Airlines, Inc.,* 553 F.3d 1241, 1244 (9th Cir.2009) (in the context of removal jurisdiction, labeling preemption as "federal law defense to a state-law claim.")

## 2. MERS's Authority to Operate in California

The FAC fleetingly alleges that "MERS [is] not registered to do business in California." FAC ¶ 9. While MERS's registration status receives no other mention in the complaint, plaintiff's opposition memorandum purports to support several of plaintiff's claims with this allegation, and defendant's reply discusses it on the merits. The court therefore discusses this issue here.

The California Corporations Code requires entities that "transact[ ] intrastate business" in California to acquire a "certificate of qualification" from the California Secretary of State. Cal. Corp.Code § 2105(a). MERS argues that its activities fall within exceptions to the statutory definition of transacting intrastate business, such that these requirement does not apply. *See* Cal. Corp.Code § 191. It is not clear to the court that MERS's activity is exempt.

■ MERS primarily relies on Cal. Corp.Code § 191(d)(3). Cal. Corp.Code § 191(d) enumerates various actions that do not trigger the registration requirement when performed by "any foreign lending institution." Because neither the FAC nor the exhibits indicate that MERS is such an institution, MERS cannot protect itself under this exemption at this stage. The statute defines "foreign lending institution" as "including, but not limited to: [i] any foreign banking corporation, [ii] any foreign corporation all of the capital stock of which is owned by one or more

foreign banking corporations, [iii] any foreign savings and loan association, [iv] any foreign insurance company or [v] any foreign corporation or association authorized by its charter to invest in loans secured by real and personal property[.]" Cal. Corp. Code § 191(d). Neither any published California decision nor any federal decision has interpreted these terms. Because plaintiff alleges that MERS does not itself invest in loans or lend money, it appears that [i], [iii], and [v] do not apply. MERS does not claim to be an insurance company under [ii]. Finally, it is certainly plausible that not all of MERS's owners are foreign corporations. At this stage of litigation, the court cannot conclude that MERS falls within any of the five enumerated examples of "foreign lending institutions," and the court declines to address sua sponte whether MERS otherwise satisfies subsection (d).

■ Defendants also invoke a second exemption, Cal. Corp.Code § 191(c)(7). While section 191(c) is not restricted to "lending institutions," MERS's acts do not fall into the categories enumerated under the section, including subsection (c)(7). Plaintiff alleges that MERS directed the trustee to initiate non-judicial foreclosure on the property. Section 191(c)(7) provides that "[c]reating evidences of debt or mortgages, liens or security interests on real or personal property" is not intrastate business activity. Although this language is unexplained, directing the trustee to initiate foreclosure proceedings appears to be more than merely creating evidence of a mortgage. This is supported by the fact that a separate statutory section, § 191(d)(3) (which MERS cannot invoke at this time, *see supra*), exempts "the enforcement of any loans by trustee's sale, judicial process or deed in lieu of foreclosure or otherwise." Interpreting section (c)(7) to include these activities would ren-

der (d)(3) surplusage, and such interpretations of California statutes are disfavored under California law. *People v. Arias*, 45 Cal.4th 169, 180, 85 Cal.Rptr.3d 1, 195 P.3d 103 (2008), *Hughes v. Bd. of Architectural Examiners*, 17 Cal.4th 763, 775, 72 Cal. Rptr.2d 624, 952 P.2d 641 (1998). Accordingly, section 191(c)(7) does not exempt MERS's activity.[12]

For these reasons, plaintiff's argument that MERS has acted in violation of Cal. Corp.Code § 2105(a) is plausible, and cannot be rejected at this stage in the litigation.

### 3. Whether MERS Has Acted Ultra–Vires

Plaintiff separately argues that MERS has acted in violation of its own "terms and conditions." These "terms" allegedly provide that

> MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a

deed of trust and any other form of security instrument under applicable state law."

FAC ¶ 10. The FAC does not specify the source of these "terms and conditions." Plaintiff's opposition memorandum states that they are taken from MERS's corporate charter, implying that an action in violation thereof would be ultra vires. Opp'n at 4. Plaintiff then alleges that these terms do not permit MERS to "act as a nominee or beneficiary of any of the Defendants." FAC ¶ 32. However, the terms explicitly permit MERS to act as nominee. Plaintiff has not alleged a violation of these terms.

### 4. Defendants' Authority to Foreclose

Another theme underlying many of plaintiff's claims is that defendants have attempted to foreclose or are foreclosing on the 25 property without satisfying the requirements for doing so. Plaintiff argues that foreclosure is barred because no defendant is a person entitled to enforce the deed of trust under the California Commercial Code and because defendants failed to issue a renewed notice of default after the initial trustee's sale was rescinded.

#### a. Applicability of the California Commercial Code

California Civil Code sections 2924 through 2924*l* govern non-judicial foreclosures pursuant to a deed of trust. Non-judicial foreclosure may be initiated by a "trustee, mortgagee, or beneficiary, or any

12. The court notes that two other opinions have concluded, at the motion to dismiss stage, that MERS is not required to register under Cal. Corp.Code § 2105(a). *Lomboy v. SCME Mortg. Bankers*, No. C–09–1160 SC, 2009 WL 1457738, *3 (N.D.Cal. May 26, 2009); *see also Benham v. Aurora Loan Services*, No. C–09–2059, 2009 WL 2880232, *4–5, 2009 U.S. Dist. LEXIS 78384, *14 (N.D.Cal. Sept. 1, 2009) (following *Lomboy* ). *Lomboy* held that MERS was exempt under sections 191(c)(1), (c)(7), and (d)(3). However, the case did not address section (d)'s predicate requirement that the entity be a "foreign lending institution," nor did the opinion address whether sections (c)(1) and (c)(7) themselves sufficed. *Benham* provided no further discussion.

of their authorized agents." Cal. Civ.Code § 2924(a)(1). Plaintiff argues that even when the deed of trust designates a party as a trustee or beneficiary and the party complies with the remaining requirements of sections 2924 through 2924*l*, this is not sufficient to demonstrate that a party has the power to foreclose, because the party must also demonstrate that it is a "person entitled to enforce" the deed of trust under California Commercial Code section 3301. Plaintiff argues that defendants must therefore "produce the [promissory] note," or at the least, identify the current holder of the note. The court joins the chorus of opinions holding that California law imposes no such requirement.

California Commercial Code sections 3301 through 3312 govern enforcement of negotiable instruments. Plaintiff assumes, without discussion, that the promissory note at issue here is a negotiable instrument as defined by Cal. Comm.Code section 3104.[13] Section 3301 provides that a negotiable instrument may be enforced by "(a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 . . . ." To be a "holder" of an instrument for purposes of this section, a party or one of its agents must be in possession of the instrument. Cal. Comm.Code § 1201(21); *see also In re Kang Jin Hwang*, 393 B.R. 701, 707 (Bankr.C.D.Cal.2008) (interpreting Cal. Comm.Code § 3301). Plaintiff argues that because no defendant has shown that the requirements of Cal. Comm.Code section 3309 have been met, defendants must "produce the note" to demonstrate that one of them possesses it. FAC ¶¶ 11, 50, 131.

As noted above, California's non-judicial foreclosure process is governed by a statutory framework that is distinct from the commercial code, California Civil Code sections 2924 through 2924l. No California court has discussed whether actual possession of the promissory note must be demonstrated in a non-judicial foreclosure. Several dozen federal district courts within California have considered the issue, however, and so far as this court is aware, the district courts have unanimously concluded that in a non-judicial foreclosure, a party need not demonstrate actual possession of the underlying note. *See, e.g., McGrew v. Countrywide Home Loans, Inc.,* 628 F.Supp.2d 1237, 1244 (S.D.Cal.2009), *Wood v. Aegis Wholesale Corp.,* 2009 WL 1948844, *5–6, 2009 U.S. Dist. LEXIS 57151, *11–*15 (E.D.Cal. July 2, 2009) (Ishii, J.).

The rationale underlying these district court decisions is that Civil Code sections 2924–2924l establish an exhaustive set of requirements for non-judicial foreclosure, and that production of the note is not one of these requirements. The California courts have summarized these requirements:

> Upon default by the trustor, the beneficiary may declare a default and proceed with a non-judicial foreclosure sale (Cal. Civ.Code § 2924). The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee (Cal. Civ.Code § 2924). After the notice of default is recorded, the

---

13. Although the court does not decide this issue, the court notes that plaintiff's view receives at least some support from other opinions. *Saks v. Charity Mission Baptist Church,* 90 Cal.App.4th 1116, 1132, 110 Cal.Rptr.2d 45 (2001) ("[A] promissory note is a form of negotiable instrument."), *Am. Sec. Bank v.* *Clarno,* 151 Cal.App.3d 874, 881, 199 Cal. Rptr. 127 (1984) (promissory note may be a negotiable instrument); *see also In re Kang Jin Hwang,* 393 B.R. at 707 (assuming without deciding that a promissory note satisfied Cal. Comm.Code § 3104).

trustee must wait three calendar months before proceeding with the sale (Cal. Civ.Code § 2924(b)). After the 3 month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale (Cal. Civ.Code § 2924f). The trustee may postpone the sale at any time before the sale is completed (Cal. Civ.Code § 2924g (c)(1)). If the sale is postponed, the requisite notices must be given (Cal. Civ.Code § 2924g(d)). The conduct of the sale, including any postponements, is governed by Civil Code Section 2924g. The property must be sold at public auction to the highest bidder (Cal. Civ.Code § 2924g(a)).

*Moeller v. Lien*, 25 Cal.App.4th 822, 830, 30 Cal.Rptr.2d 777 (1994).

Some courts appear to have reasoned that plaintiff's position 28 would create an explicit conflict with the statute's provisions. The statute authorizes the "trustee, mortgagee, or beneficiary, or any of their authorized agents" to initiate foreclosure. Cal. Civ.Code § 2924(a)(1). Under California Civil Code section 2924(b)(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." Several courts have held that this language demonstrates that possession of the note is not required, apparently concluding that the statute authorizes initiation of foreclosure by parties who would not be expected to possess the note. *See, e.g., Spencer v. DHI Mortg. Co.*, 642 F.Supp.2d 1153, 1166–67 (E.D.Cal.2009) (O'Neill, J.). However, the precise reasoning of these cases is unclear.[14]

A second argument adopted by sister district courts is that even if requiring possession of the promissory note does not contradict the statute's provisions, it nonetheless extends them, and such extensions are impermissible. *See, e.g., Bouyer v. Countrywide Bank, FSB*, No. C 08–5583, 2009 U.S. Dist. LEXIS 53940, *23–*24 (N.D. Cal. June 25, 2009). California courts have described the statute as establishing a "comprehensive scheme" for nonjudicial foreclosures. *Homestead Sav. v. Darmiento*, 230 Cal.App.3d 424, 433, 281 Cal.Rptr. 367 (1991). Because this scheme "is intended to be exhaustive," California courts have refused to incorporate additional obligations, such as allowing a debtor to invoke a separate statutory right to cure a default. *Moeller*, 25 Cal.App.4th at 834, 30 Cal.Rptr.2d 777 (refusing to apply Cal. Civ.Code § 3275). The California Supreme Court has similarly held that "[t]he rights and powers of trustees in nonjudicial foreclosure proceedings have long been regarded as strictly limited and defined by the contract of the parties and the statutes." *I.E. Associates v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 288, 216 Cal.Rptr. 438, 702 P.2d 596 (1985). *I.E. Associates* held that while a trustee has a statutory duty to contact a trustor at the trustor's last known address prior to non-judicial foreclosure, the Court could not impose a further duty to search for the trustor's actual current address. *Id.* District courts have applied *I.E. Associates* and *Moeller* to hold that the trustee's duties are "strictly limited" to those contained specifically in the non-judicial foreclosure statute, section 2924 *et seq. See, e.g., Bouyer v. Countrywide Bank, FSB*, 2009 U.S. Dist. LEXIS 53940, *23–*24 (N.D. Cal. June 25, 2009). These courts have held that because section 2924 does not specify that

---

**14.** These courts may be relying on an understanding that neither the trustee or an authorized representative would be in possession of the note. Because this court has no way of knowing that is the case, I respectfully cannot join in that view.

any party must possess the note, such possession is not required. *Id.* Courts have similarly refused to require a trustee "to identify the party in physical possession of the original promissory note prior to commencing a nonjudicial foreclosure." *Ritchie v. Cmty. Lending Corp.,* 2009 WL 2581414, *7, 2009 U.S. Dist. LEXIS 73216, *20 (C.D.Cal. Aug. 12, 2009).[15]

Finally, while the above arguments have focused on and rejected a requirement of *production* of the note, a series of opinions by Judge Ishii have held that under California law, *possession* of the note is not required either. *Garcia v. HomEq Servicing Corp.,* 2009 U.S. Dist. LEXIS 77697 *11 (E.D.Cal. Aug. 18, 2009), *Topete v. ETS Servs., LLC,* 2009 WL 2579092 *3–4, 2009 U.S. Dist. LEXIS 77761 *10–*11 (E.D.Cal. Aug. 18, 2009), *Wood v. Aegis Wholesale Corp.,* 2009 WL 1948844, *5, 2009 U.S. Dist. LEXIS 57151, *14 (E.D.Cal. July 2, 2009). These opinions reason as follows. Under Cal. Civ.Code § 2932.5, when the beneficial interest under the promissory note is assigned, the assignee may exercise a security interest in real property provided that the assignment is "duly acknowledged and recorded." *See, e.g., Wood,* 2009 WL 1948844 at *5, 2009 U.S. Dist. LEXIS 57151 at *14. The Ninth Circuit has applied California law to hold that promissory notes arising out of real estate loans could be sold without transfer of possession of the documents themselves. *Id.* (citing *In re Golden Plan of Cal., Inc.,* 829 F.2d 705, 707, 708 n. 2, 710 (9th Cir.1986)). Judge Ishii concluded that because a party may come to validly own a beneficial interest in a promissory note without possession of the promissory note itself, and because this interest, if recorded on the deed of trust, carries with it the right to foreclose, possession of the promissory note is not a prerequisite to non-judicial foreclosure. *Id.*

Having reviewed the arguments adopted by the district courts, the court is left with the sense that reasonable minds could disagree. Notably, *I.E. Associates* held that trustee's duties are "strictly limited" to those arising under the "statutes," and a reasonable jurist could conclude that the plural "statutes" incorporates the Commercial Code. Although the Civil Code authorizes a number of parties to initiate nonjudicial foreclosure, it could be that whichever of those parties possesses the note may foreclose.

At some point, however, the opinion of a large number of decisions, while not in a sense binding, are by virtue of the sheer number, determinative. I cannot conclude that the result reached by the district courts is unreasonable or does not accord with the law. I further note that this conclusion is not obviously at odds with the policies underlying the California statutes. The apparent purpose of requiring possession of a negotiable instrument is to avoid fraud. In the context of non-judicial foreclosures, however, the danger of fraud is minimized by the requirement that the deed of trust be recorded, as must be any assignment or substitution of the parties thereto. While it may be that requiring production of the note would have done something to limit the mischief that led to the economic pain the nation has suffered, the great weight of authority has reasonably concluded that California law does not impose this requirement.

 While the court concludes that neither production nor possession is required, the court need not decide whether

---

15. To say that a trustee's duties are strictly limited does not appear to this court to preclude possession of the note as a prerequisite to foreclosure. On the other hand, perhaps it is not unreasonable to suggest that such a prerequisite imposes a nonstatutory duty.

this is because promissory notes are not "negotiable instruments," or instead because Cal. Civ.Code § 2924 *et seq.* render the Commercial Code inapplicable. The court leaves that question for the California courts. The court solely concludes that neither possession of the promissory note nor identification of the party in possession is a prerequisite to non-judicial foreclosure.

#### b. Compliance with Cal. Civ.Code §§ 2924–2924l

 Plaintiff alternatively argues that defendants have failed to comply with the procedural requirements imposed by California Civil Code sections 2924 through 2924l. As explained above, before a property can be sold through a non-judicial foreclosure, the trustee or other foreclosing party must record a Notice of Default followed by a Notice of Trustee's Sale. Defendant ReconTrust recorded these two documents, and then conducted a trustee's sale on October 23, 2008. Defs.' RFJN Ex. F. The sale itself was then rescinded. Plaintiff argues that rescission of the sale necessarily also rescinded the antecedent Notice of Default and Notice of Trustee's Sale. Plaintiff offers no authority to support this position, and plaintiff's position is contrary to California law. Rescission of a trustee's deed "restore[s] the condition of record title to the real property described in the trustee's deed and the existence and priority of all lienholders to the status quo prior to the recordation of the trustee's deed upon sale." Cal. Civ.Code § 1058.5(b). The record of title on the property prior to recordation of the deed upon sale included the notice of default and notice of trustee's sale. Although ReconTrust recorded a second Notice of Trustee's Sale, there was no requirement to also issue a renewed notice of default. That is, there appears no reason to believe that rescission of the sale canceled the precedent documents.

### B. Specific Claims

#### 1. Truth in Lending Act

 Plaintiff's TILA claim seeks civil damages from defendant CHL on the ground that CHL violated TILA's disclosure obligations.[16] Although some of the allegations underlying this claim are conclusory and fail to support a claim, plaintiff alleges a basis for TILA liability that is plausible and that cannot be dismissed as untimely at this stage.

 Plaintiff generally alleges that CHL violated TILA in that CHL:

(a) fail[ed] to provide required disclosures prior to consummation of the transaction;

(b) fail[ed] to make required disclosures clearly and conspicuously in writing;

(c) fail[ed] to timely deliver to Plaintiff notices required by TILA;

(d) plac[ed] terms prohibited by TILA into the transaction; and

(e) fail[ed] to disclose all finance charge details and the annual percentage rate based upon properly calculated and disclosed finance charges and amounts financed.

FAC ¶ 62. Two of these allegations, (b) and (d), must be rejected. The "Truth in Lending Disclosure Statement" and "Mortgage Insurance Disclosure" both bear plaintiff's dated signature, the authenticity of which plaintiff does not contest. Plaintiff therefore ultimately received these documents. The court accordingly rejects (b) insofar as it alleges that the informa-

---

**16.** As noted above, plaintiff has conceded that rescission of his loan is not available under TILA.

tion contained in these documents was never disclosed. Allegation (d) is conclusory in that neither it nor anything else in the FAC provide any notice as to what terms, if any, were 'included in the transaction' but prohibited by TILA.

■ The remaining allegations cannot be disregarded, and CHL has not met its burden of explaining how these allegations fail to support a TILA claim. Although (a) and (c) do not identify specific disclosures, the FAC's other allegations make it clear that plaintiff alleges that he did not receive *any* disclosures in advance of closing. The exhibits do not conclusively refute this allegation, in that plaintiff's signature on the disclosures and the deed of trust is dated July 26, 2007, and the signature on the promissory note is undated. CHL has not addressed plaintiff's legal theory that even when written disclosures are provided to and signed by the borrower, these disclosures may not satisfy TILA's disclosure obligations when the borrower is denied an adequate opportunity to review them prior to closing. Absent argument on this issue, the court assumes for purposes of this motion that this theory is valid. These allegations therefore state a "plausible" claim for relief.

■ The final allegation, (e), is partially refuted by the exhibits, in that CHL did state the amount financed, annual percentage rate, or finance charges. *See* Defs.' RFJN Ex. C. The exhibit does not establish, however, that these statements were accurate. Insofar as plaintiff alleges that CHL failed to disclose accurate information, allegation (e) is not refuted. As discussed above, plaintiff alleges that his monthly payments have increased beyond the amount indicated in these disclosures.

FAC ¶ 26.[17] Plaintiff has therefore adequately alleged a claim that disclosure obligations were violated because the disclosures were inaccurate.

■ CHL separately argues that even if plaintiff adequately alleges a failure to make disclosures required by TILA under any of the above theories, plaintiff's TILA claim is barred by TILA's one year statute of limitations for civil damages claims. 15 U.S.C. § 1640(e). Here, plaintiff's TILA claim arises solely out of failure to make required disclosures at the time the loan was entered, which was on or around July 26, 2007. The limitations period began to run at that time, *King v. California*, 784 F.2d 910, 914 (9th Cir.1986), and would normally have expired on July 26, 2008. Plaintiff's initial complaint was filed May 12, 2009.[18]

■ This does not end the inquiry, however, because TILA's limitations period for civil damages may be equitably tolled, *King*, 784 F.2d at 915, and subject to equitable estoppel, *Ayala v. World Sav. Bank, FSB*, 616 F.Supp.2d 1007 (C.D.Cal. 2009). Plaintiff argues that one or both doctrines apply here, because plaintiff did not have "reasonable opportunity to discover" the facts underlying the claim.

■ Because the statute of limitations is an affirmative defense, its invocation in the context of a motion to dismiss raises specific concerns, especially when the plaintiff raises an equitable tolling or equitable estoppel argument. "Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss ... if equitable tolling is

17. Plaintiff has also provided some evidence to this effect. Pl.'s RFJN Ex. 1.

18. For purposes of this motion, the court need not determine whether the relevant filing date is the one provided above, which is the date the original complaint was filed, or instead the date for the amended complaint, as defendants argue.

at issue." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003–04 (9th Cir.2006) (citing *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir.1995)). In light of these concerns, the Ninth Circuit has held that a motion to dismiss on statute of limitations grounds cannot be granted if "the complaint, liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the potential applicability of the equitable tolling doctrine." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir.1993); *see also Morales v. City of Los Angeles*, 214 F.3d 1151, 1153, 1155 (9th Cir.2000). Because equitable tolling turns on matters outside of the pleadings, the Supreme Court's recent decisions in *Twombly* and *Iqbal*, which concerned the requirements of Fed.R.Civ.P. 8, do not provide reason to revisit this rule. Although the Ninth Circuit has not discussed the rule since *Twombly* was decided, other courts have continued to follow it. *Plascencia v. Lending 1st Mortg.*, 583 F.Supp.2d 1090, 1098 (N.D.Cal.2008), *Nava v. VirtualBank*, 2008 WL 2873406, 2008 U.S. Dist. LEXIS 72819 (E.D.Cal. July 16, 2008) (Damrell, J); *see also USPPS, Ltd. v. Avery Dennison Corp.*, 326 Fed.Appx. 842 (5th Cir.2009) (unpublished Fifth Circuit decision applying a similar rule).

In applying this rule to non-TILA cases, the Ninth Circuit has held that dismissal was appropriate where "it [was] clear that [plaintiffs] have had the information necessary to bring suit … for many years," and plaintiffs did not argue that "extraordinary circumstances beyond [their] control made it impossible to file the claims on time." *Lien Huynh*, 465 F.3d at 1004. Conversely, dismissal was inappropriate where plaintiff alleged both "that it did not discover" the defendant's alleged wrongdoing until soon before the claim was filed and that plaintiff's "failure to discover the [wrongdoing] earlier was not due to [plaintiff's] lack of diligence, but rather to the [defendant]'s deliberate failure to provide [plaintiff] with accurate information." *Supermail Cargo*, 68 F.3d at 1208; *see also Cervantes*, 5 F.3d at 1277 (reversing dismissal).

Here, insofar as plaintiff's TILA claim is based on the allegation that the required disclosures were not made prior to completion of the transaction, it is clear that plaintiff knew all the pertinent facts throughout the limitations period. Plaintiff admits receiving the disclosures; he merely argues that they should have been made earlier. Plaintiff was well aware of the fact that he did not receive the disclosures at an earlier time. Nor has plaintiff identified any potential barrier to bringing suit on this issue prior to now. Under *Lien Huynh*, dismissal on statute of limitations grounds is appropriate as to this basis for plaintiff's TILA claim. 465 F.3d at 1004.

■ Insofar as plaintiff's TILA claim is based on the allegation that the disclosures contained inaccurate information, however, the court cannot determine when plaintiff learned of these inaccuracies, and the court therefore cannot conclude that there is no potential for equitable tolling. *Cervantes*, 5 F.3d at 1277. It may be that plaintiff could not and did not discover that this information was inaccurate until his monthly bills increased, and that the statute tolled for a period sufficient to render this claim timely.

### 2. Real Estate Settlement Procedures Act

■ Plaintiff brings RESPA claims against CHL and BAC. Plaintiff alleges that CHL (together with Ron Allen & Associates Real Estate and Ronnie D Allen) "violated RESPA at the time of closing on the sale of the Property by failing to correctly and accurately comply with the disclosure requirements provided

therein." FAC ¶ 86. This allegation is conclusory in that it fails to identify what information, if any, CHL failed to disclose or CHL inaccurately disclosed.[19]

■ Plaintiff alleges that BAC violated RESPA by failing to respond to a "qualified written request" under RESPA.[20] As discussed in part II.C above, a "qualified written request" is a request "for information relating to the servicing of [federally regulated mortgage loans]." 12 U.S.C. § 2605(e)(1)(A). Plaintiff has not alleged that he requested such information.

Plaintiff's RESPA claim is therefore dismissed without prejudice. If plaintiff may allege, consistent with Rule 11, that his letter to BAC sought information regarding loan servicing, or that CHL failed to disclose or inaccurately disclosed particular information required by RESPA, plaintiff may amend this claim.

### 3. Rosenthal Fair Debt Collection Practices Act

■ California's Rosenthal Fair Debt Collection Practices Act prohibits creditors and debt collectors from, among other things, making false, deceptive, or misleading representations in an effort to collect a debt. Cal. Civ.Code § 1788 *et seq.* A "debt collector" is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ.Code § 1788.2(c); *see also Izenberg v. ETS Services, LLC,* 589 F.Supp.2d 1193, 1199 (C.D.Cal.2008). Plaintiff allege that defendants CHL and BAC violated the Rosenthal Act by:

threaten[ing] to take actions not permitted by law, including but not limited to: collecting on a debt not owed to [them], making false reports to credit reporting agencies, foreclosing upon a void security interest, foreclosing upon a Note of which they were not in possession nor otherwise entitled to payment, falsely stating the amount of a debt, increasing the amount of a debt by including amounts that are not permitted by law or contract, and using unfair and unconscionable means in an attempt to collect a debt.

FAC ¶ 72. Among these allegations, the allegation that defendants "threatened to . . . us[e] unfair and unconscionable means in an attempt to collect a debt," without any indication as to what those means were, is plainly conclusory.

■ The allegations regarding foreclosure, while not necessarily conclusory, identify conduct that is not prohibited by the Rosenthal Act. Foreclosure on a property as security on a debt is not debt collection activity encompassed by the Rosenthal Act. Cal. Civ.Code § 2924(b), *Izenberg,* 589 F.Supp.2d at 1199; *see also Yulaeva v. Greenpoint Mortgage Funding,* No. 09-1504, 24-25, 2009 WL 2880393, *10, 2009 U.S. Dist. LEXIS 79094, *29-*30 (E.D.Cal. Sept. 3, 2009) (Karlton, J) (discussing the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*). Although plaintiff's claim is formally based on the "threat" to foreclose rather than foreclosure itself, the Rosenthal Act only prohibits threats when the threatened conduct is also prohibited by the Rosenthal Act; the Act does not prohibit a creditor

19. Plaintiff argues that this allegation constructively identifies specific information that should have been disclosed, because "the only disclosures mandated under RESPA at the time of closing[] are those pertaining to escrow costs." Amended Opp'n, 15. Of the two citations plaintiff provides in purported support of this argument, 12 U.S.C. § 2601 is a statement of purpose containing no requirements, and 12 C.F.R. § 3500.2(b) is not a valid citation.

20. Plaintiff also argues that CHL violated RESPA in this manner. However, plaintiff has not alleged that he requested any information from CHL.

from honestly representing that he can and will foreclose. Cal. Civ Code § 1788.13.[21]

Plaintiff then alleges that defendants threatened to "mak[e] false reports to credit reporting agencies." Although the Rosenthal Act does not explicitly prohibit reporting false information to a credit agency, the Act explicitly incorporates federal law, Cal. Civ.Code § 1788.17, and the federal Fair Debt Collection Practices Act prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false," 15 U.S.C. § 1692e(8).[22] This allegation satisfies the general requirements of Rule 8, in that it identifies the circumstances, occurrences and events of the challenged conduct. Rule 9(b)'s heightened requirements do not apply to this theory of liability, in that this theory does not "sound[ ] in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir.2009). Plaintiff does not allege that false representations were actually made and relied upon, only that they were threatened. Accordingly, fraud is not the "basis of [the] claim," and Fed. R.Civ.P. 9(b) does not apply. *Vess*, 317 F.3d at 1103–04.

Plaintiff further alleges that defendants threatened to "increas[e] the amount of a debt by including amounts that are not permitted by law or contract collecting on a debt not owed to [them]." Section 1788.13(e) prohibits adding fees that may not be lawfully added. This claim also provides the minimal particularity required by Rule 8.

Finally, plaintiff alleges that CHL and BAC "threatened to . . . falsely stat[e] the amount of a debt." FAC ¶ 72. As to this allegation, an alleged "threat" is nearly incoherent; Plaintiff apparently means simply that CHL and BAC falsely stated the debt. Because this allegation concerns particular false representations, it sounds in fraud, and is subject to Rule 9(b)'s heightened requirements. Plaintiff has satisfied these requirements, alleging that misrepresentations occurred in the monthly statements sent to plaintiff, which were allegedly false in that they stated overly high balances and corresponding monthly obligations. Although plaintiff has not distinguished CHL and BAC's particular roles in these representations, this omission is excusable. Plaintiff's monthly statements are sent by "Countrywide Home Loans." At this stage of litigation, plaintiff may not be able to allege whether the statements are sent by BAC, which was formerly known as "Countrywide Home Loans Servicing," or by CHL, i.e., "Countrywide Home Loans, Inc." No such allegation is required.

Accordingly, some, but not all, of plaintiff's theories of liability under the Rosenthal Act are sufficiently alleged. Defendants' motion is granted in part and denied in part as to plaintiff's Rosenthal Act claim.

### 4. Breach of Fiduciary Duty

Plaintiff brings a claim for breach of fiduciary duty against defendants Ron

---

**21.** Cal. Civ.Code § 1788.10 enumerates the types of "threats" that are prohibited under the Rosenthal Act. Section 1788.10(f) prohibits "The threat to take any action against the debtor which is prohibited by this title."

**22.** While the court is unaware of any Rosenthal Act provision prohibiting communication of false information to a credit reporting agency, the Rosenthal Act does prohibit falsely stating that information will be reported to a credit agency. Cal. Civ.Code § 1788.13(f). Plaintiff has not alleged that defendants made or threatened to make such a false representation.

Allen & Associates Real Estate, Ronnie D. Allen, and CHL. The former two defendants are not directly at issue in this motion. The court dismisses this claim as to CHL, because plaintiff has not alleged facts supporting the conclusion that CHL owed plaintiff a fiduciary duty, nor has plaintiff provided a legal theory under which CHL may be liable under the brokers' fiduciary duties.

■ In general, a lender does not owe a fiduciary duty to a borrower. "A commercial lender is entitled to pursue its own economic interests in a loan transaction. This right is inconsistent with the obligations of a fiduciary which require that the fiduciary knowingly agree to subordinate its interests to act on behalf of and for the benefit of another." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1093 n. 1, 283 Cal.Rptr. 53 (1991). "[A]bsent special circumstances . . . a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender." *Oaks Management Corporation v. Superior Court*, 145 Cal.App.4th 453, 466, 51 Cal. Rptr.3d 561 (2006) (collecting cases).

Plaintiff argues that because of CHL's influence upon plaintiff's brokers, Ron Allen & Associates Real Estate and Ronnie D. Allen, CHL is subject to the fiduciary duty a broker owes to the client. CHL's influence allegedly consisted of commissions paid to the brokers based on the volume and profitability (for CHL) of the loans brokers sold, as well as "train[ing], direct[ion], [and] authoriz[ation]," although plaintiff has not explained the sense in which CHL directed or authorized the broker's conduct. FAC ¶¶ 22, 35, 92. The case relied upon by plaintiff, *Wyatt v. Union Mortg. Co.*, held that "*[d]irectors and officers of a corporation* . . . may become liable [for a corporation's torts] if they directly ordered, authorized or participated in the tortious conduct." *Wyatt v. Union Mortg. Co.*, 24 Cal.3d 773, 785, 157 Cal.Rptr. 392, 598 P.2d 45 (1979) (emphasis added). Neither *Wyatt* nor the authorities cited therein suggests that this rule imposes liability outside the relationship between a corporation and its officers.

■ Plaintiff also argues that CHL may be vicariously liable under employer/employee, agency, and conspiracy theories.[23] The factual allegations do not support employee or agency theories. As to master/servant relationships, the "primary factor" in whether the purported employer exercises control over the purported employee. *See Metropolitan Water Dist. v. Superior Court*, 32 Cal.4th 491, 512, 9 Cal. Rptr.3d 857, 84 P.3d 966 (2004) (following the Restatement Second of Agency (1958), § 220). Plaintiff has not alleged facts indicating that CHL exercised the requisite control over the brokers' activities. Other factors courts may consider in this analysis are not relevant here. *See Tieberg v. Unemployment Ins. Appeals Board*, 2 Cal.3d 943, 950, 88 Cal.Rptr. 175, 471 P.2d 975 (1970) (quoting Restatement of Agency, Second § 220(2)(b)-(j)).

■ As to agency, an agency relationship exists where a principal authorizes an agent to represent and bind the principal. Cal. Civ.Code § 2295. Here, although plaintiff has alleged that CHL offered the brokers incentives to act in ways that furthered CHL's interests, there is no allegation indicating that the CHL gave the brokers authority to represent or bind CHL, or that CHL took some action that would have given plaintiff the impression

---

**23.** Because the court concludes that each of these theories fails, the court does not address the relationship between these theories and the reasoning in *Wyatt*. *See Doctors' Co. v. Superior Court*, 49 Cal.3d 39, 48, 260 Cal. Rptr. 183, 775 P.2d 508 (1989) (citing *Wyatt v. Union Mortgage Co.*, 24 Cal.3d at 785, 157 Cal.Rptr. 392, 598 P.2d 45).

that such a relationship existed. Cal. Civ. Code §§ 2299, 2300; *J.L. v. Children's Institute, Inc.,* 177 Cal.App.4th 388, 403–404, 99 Cal.Rptr.3d 5 (2009). Therefore, plaintiff's allegations do not support a finding of either actual or ostensible agency.

■■■■■ Turning finally to conspiracy, CHL may not be liable for conspiracy to breach a fiduciary duty. Under California law, a party may be vicariously liable for another's tort in a civil conspiracy where the plaintiff shows "(1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the common design." *Rusheen v. Cohen,* 37 Cal.4th 1048, 1062, 39 Cal.Rptr.3d 516, 128 P.3d 713 (2006) (citing *Doctors' Co. v. Superior Court,* 49 Cal.3d 39, 44, 260 Cal.Rptr. 183, 775 P.2d 508 (1989)), *see also Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 511, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994).[24] The California Supreme Court has held that even when these elements are shown, however, a conspirator cannot be liable unless he personally owed the duty that was breached. *Applied Equipment,* 7 Cal.4th at 511, 514, 28 Cal.Rptr.2d 475, 869 P.2d 454. Civil conspiracy "cannot create a duty .... [i]t allows tort recovery only against a party who already owes the duty." *Id.* at 511, 28 Cal.Rptr.2d 475, 869 P.2d 454. *Applied Equipment* has thus sharply limited the scope of civil conspiracy liability. Numerous California cases have cited *Applied Equipment* to limit civil conspiracy liability, and this court is aware of only two post-*Applied Equipment* cases imposing civil conspiracy liability. *Kesmodel v. Rand,* 119 Cal.App.4th 1128, 1133, 1141, 15 Cal.Rptr.3d 118 (2004), *Shafer v. Berger,*

*Kahn, Shafton, Moss, Figler, Simon & Gladstone,* 107 Cal.App.4th 54, 84, 131 Cal. Rptr.2d 777 (2003). These cases involved generally-applicable tort duties, respectively, the duty not to falsely arrest, and the duty not to engage in affirmative fraud. In contrast, courts have specifically held that civil conspiracy cannot impose liability for breach of fiduciary duty on a party that does not already owe such a duty. *Everest Investors 8 v. Whitehall Real Estate Ltd. Partnership XI,* 100 Cal.App.4th 1102, 1107, 123 Cal.Rptr.2d 297 (2002) (citing *Doctors' Co.,* 49 Cal.3d at 41–42, 44, 260 Cal.Rptr. 183, 775 P.2d 508 and *Applied Equipment,* 7 Cal.4th at 510–512, 28 Cal. Rptr.2d 475, 869 P.2d 454). Thus, civil conspiracy allows imposition of vicarious liability on a party who owes a tort duty, but who did not personally breach that duty. *Doctors' Co.,* 49 Cal.3d at 44, 260 Cal.Rptr. 183, 775 P.2d 508 (A party may be liable "irrespective of whether or not he was a direct actor and regardless of the degree of his activity."); *see also Kesmodel,* 119 Cal.App.4th at 1141, 15 Cal. Rptr.3d 118 (illustrating application of this rule).

The California Supreme Court's holdings appears to compel the conclusion that in this case, where CHL is alleged to have induced another, the broker, to engage in a joint scheme that will breach the broker's fiduciary duty, CHL may not be liable under an independent civil conspiracy claim nor under a claim for civil conspiracy to commit breach of fiduciary duty. *Applied Equipment,* 7 Cal.4th at 511, 514, 28 Cal.Rptr.2d 475, 869 P.2d 454. Whatever the wisdom of this rule, the court is bound by the California Supreme Court's holdings on this issue. It may be that CHL is

---

**24.** *Rusheen* stated in passing that these were "The elements of an action for civil conspiracy." 37 Cal.4th at 1062, 39 Cal.Rptr.3d 516, 128 P.3d 713. In cases more directly considering civil conspiracy liability, however, the California Supreme Court has explained that "Conspiracy is not a cause of action." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 510, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994).

liable, on some other theory, for interfering with the fiduciary duty owed to plaintiff by plaintiff's mortgage brokers. The court declines to speculate on what such a claim would entail, or its likelihood of success. *Associated General Contractors of California*, 459 U.S. at 526, 103 S.Ct. 897. In the present complaint, the purported interference identified by plaintiff is insufficient to give rise to a fiduciary duty running from the lender to the borrower. *Oaks Management*, 145 Cal.App.4th at 466, 51 Cal.Rptr.3d 561. Absent such a duty, plaintiff's claim for breach of fiduciary duty must be dismissed as to CHL.

### 5. Fraud

Plaintiff brings a claim for fraud as to all defendants. The elements of a claim for intentional misrepresentation under California law are (1) misrepresentation (a false representation, concealment or nondisclosure), (2) knowledge of falsity, (3) intent to defraud (to induce reliance), (4) justifiable reliance, and (5) resulting damage. *Agosta v. Astor*, 120 Cal.App.4th 596, 603, 15 Cal.Rptr.3d 565 (2004). Claims for fraud are subject to a heightened pleading requirement under Fed. R.Civ.P. 9(b), as discussed above.

The FAC's allegations in support of the claim for fraud are that:

Defendants, and each of them, have made *several representations to Plaintiff* with regard to material facts. [¶] These material representations made by Defendants were false. [¶] Defendants knew that these material representations were false when made, or these material representations were made with reckless disregard for the truth. [¶] Defendants intended that Plaintiff rely on these material representations. [¶] Plaintiff reasonably relied on said representations. [¶] As a result of Plaintiff['s] reliance, he was harmed and suffered damages.

FAC ¶¶ 102–105. These allegations are simply conclusory, and they fail to meet the specificity required by Fed.R.Civ.P. 9(b). They refer to no specific conduct, and give defendants absolutely no indication as to what fraud underlies the fraud claims.

Without attempting to defend the general allegations quoted above, plaintiff contends that the claim nonetheless satisfies Rule 9(b) because it incorporates by reference all other allegations in the complaint. The FAC is twenty five pages long, consists of 140 numbered paragraphs, and, as noted above, contains allegations relating to eight separate defendants. Moreover, none of these allegations specifically identify any misrepresentation by the parties to this motion. Plaintiff's shotgun incorporation of allegations by reference fails to provide the notice required by Rule 9, and plaintiff's fraud claim is dismissed.

Plaintiff's opposition memorandum purports to identify various particular allegations sufficient to support a claim for fraud. Because defendant has responded to these arguments, the court discusses whether amending the complaint to indicate that the fraud claim is predicated on these allegations would be futile.

Many of the representations highlighted by plaintiff in his opposition were made by Jake Weathers, who is no longer a defendant in this suit, and by defendants Ron Allen & Associates Real Estate and Ronald D. Allen, who are not parties to this motion. For example, plaintiff argues that he was "fraudulently induced ... by Defendants RAARE, Allen and Weathers," Opp'n at 18–19 (citing FAC ¶¶ 22–25), and specifically that Weathers promised that plaintiff would be able to refinance his loan, FAC ¶ 28. *Applied Equipment* does not preclude holding CHL vicariously liable in a claim for civil conspiracy to com-

mit this fraud, because the duty not to engage in affirmative fraud, unlike a fiduciary duty, is owed generally. *Shafer*, 107 Cal.App.4th at 84, 131 Cal.Rptr.2d 777. Because the parties have not further discussed this issue, the court's discussion stops here.

█ Plaintiff also argues that MERS and ReconTrust misrepresented their interests in the property when initiating foreclosure proceedings by representing that MERS was a beneficiary under the deed of trust. This theory is not supported by any allegations in the FAC—i.e., the FAC does not allege that MERS represented that it was a beneficiary while knowing that it was not. More importantly, the FAC does not contain allegations that would render plausible the argument that, notwithstanding the fact that MERS is listed as a beneficiary on the deed of trust and that no assignment has been recorded, MERS is not the beneficiary.

Plaintiff's remaining arguments amount to the claim that "the entire scheme of selling and transferring notes and deeds ... was fraudulent." Opp'n, 19. Even if, as plaintiff argues, this scheme is wrongful, plaintiff must explain how this wrongfulness sounds in fraud and results in damages to plaintiff, as contrasted with society as a whole.

Plaintiff has not identified further particular representations underlying the fraud claim.[25] Accordingly, defendants' motion to dismiss the fraud claim is grant-

ed as to defendants CHL, BAC, MERS, and ReconTrust. Although the complaint now before the court is without merit in this regard, the court cannot say that a more carefully crafted complaint might not state a cause of action. Accordingly, the dismissal will be without prejudice. Plaintiff is warned, however, that an amended complaint drafted with the same lack of merit as the instant one will result in appropriate sanctions.

### 6. Negligence

█ Plaintiff's claim for negligence is brought as to all defendants. Under California law, the elements of a claim for negligence are "(a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917, 50 Cal.Rptr.2d 309, 911 P.2d 496 (1996) (internal citations and quotations omitted); *see also* Cal Civ Code § 1714(a). Moving defendants argue that plaintiff has not adequately alleged facts supporting any of these elements. The court discusses the allegations of negligence as to each defendant separately.[26]

#### a. CHL

##### i. Lenders' Duty of Care to Borrowers

The court rejects defendants' argument that a lender never owes a duty of care to borrowers. California courts have stated

---

**25.** Plaintiff has not argued that his fraud claim is or may be predicated on a failure to make statutorily required disclosures.

**26.** Plaintiff's negligence claim contains only two factual allegations, that "defendants" "failed to maintain the original Mortgage Note, failed to properly create original documents, and failed to make the required disclosures to the Plaintiff," and "took payments to which they were not entitled, charged fees they were not entitled to charge, and made or

otherwise authorized negative reporting of Plaintiff creditworthiness to various credit bureaus wrongfully." FAC ¶ 79–80. As with plaintiff's fraud claim, plaintiff relies on allegations incorporated by reference to provide details to these allegations. Because the negligence claim provides at least some indication as to its basis, the court does not dismiss the claim on this ground alone. Plaintiff is cautioned, however, against future reliance on this mode of pleading.

that "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark,* 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53. Applying this rule, the court in *Nymark* granted summary judgment to defendant on a claim that the defendant lender had acted negligently in appraising the borrower's collateral to determine if it is adequate security for a loan refinancing the borrower's mortgage, as the court concluded as a matter of law that no duty of care existed with respect to the appraisal. *Id.* at 1096, 283 Cal.Rptr. 53. *See also Wagner v. Benson,* 101 Cal. App.3d 27, 35, 161 Cal.Rptr. 516 (1980) (a lender has no duty to ensure that borrower will use borrowed money wisely).

 The court understands *Nymark* to be limited in two ways. First, a lender may owe to a borrower a duty of care sounding in negligence when the lender's activities exceed those of a conventional lender. The *Nymark* court noted that the "complaint does not allege, nor does anything in the summary judgment papers indicate, that the appraisal was intended to induce plaintiff to enter into the loan transaction or to assure him that his collateral was sound." [27] *Id.* at 1096–97, 283 Cal.Rptr. 53. *Nymark* thereby implied that had such an intent been present, the lender may have had a duty to exercise due care in preparing the appraisal. *See*

*also Wagner v. Benson,* 101 Cal.App.3d 27, 35, 161 Cal.Rptr. 516 (1980) ("Liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender.").

Second, even when a lender's acts are confined to their traditional scope, *Nymark* announced only a "general" rule. Rather than conclude that no duty existed per se, the *Nymark* court determined whether a duty existed on the facts of that case by applying the six-factor test established by the California Supreme Court in *Biakanja v. Irving,* 49 Cal.2d 647, 320 P.2d 16 (1958). *Nymark,* 231 Cal.App.3d at 1098, 283 Cal.Rptr. 53; *see also Glenn K. Jackson Inc. v. Roe,* 273 F.3d 1192, 1197 (9th Cir.2001). This test balances six non-exhaustive factors:

[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*Roe,* 273 F.3d at 1197 (quoting *Biakanja,* 49 Cal.2d at 650, 320 P.2d 16) (modification in *Roe* ). Although *Biakanja* stated that this test determines "whether in a specific case the defendant will be held liable to a

---

**27.** The court notes that in *Nymark,* the loan was being taken to refinance a mortgage. In this scenario, a borrower may have less need to know the value of the property. The home has already been bought, and if the lender attempts to enforce the security through a non-judicial foreclosure, the lender may not seek a deficiency judgment against the borrower. *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1236, 44 Cal.Rptr.2d 352, 900 P.2d 601 (1995) (citing *Roseleaf Corp. v. Chierighino,* 59 Cal.2d 35, 43–44, 27 Cal.Rptr. 873, 378 P.2d 97 (1963)). Even in this situa-

tion, however, the borrower has an interest in the value of the home, at least because the lender may seek a deficiency judgment after a *judicial* foreclosure. *Id.*

In the context of a purchase money loan, the borrower has a much clearer interest in the appraisal, and the instant court doubts that *Nymark* could be extended to such a case. In this case, however, there is no dispute regarding the accuracy of the appraisal. The court instead discusses *Nymark* for its general holdings.

third person not in privity" with the defendant, 49 Cal.2d at 650, 320 P.2d 16, *Nymark* held that this test also determines "whether a financial institution owes a duty of care to a borrower-client," 231 Cal.App.3d at 1098, 283 Cal.Rptr. 53. Applying these factors to the specific facts in that case, the *Nymark* court assumed that plaintiff suffered injury, but held that the remaining factors all indicated against finding a duty of care. *Id.* at 1098–1100, 283 Cal.Rptr. 53.

In *Roe*, the Ninth Circuit noted that the California Supreme Court "arguably limited" *Biakanja* in *Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 11 Cal.Rptr.2d 51, 834 P.2d 745 (1992), which held a court must consider three additional factors before imposing a duty of care. *Roe*, 273 F.3d at 1198. *Roe* summarized these factors as "(1) liability may in particular cases be out of proportion to fault; (2) parties should be encouraged to rely on their own ability to protect themselves through their own prudence, diligence and contracting power; and (3) the potential adverse impact on the class of defendants upon whom the duty is imposed." *Id.* (citing *Bily*, 3 Cal.4th at 399–405, 11 Cal.Rptr.2d 51, 834 P.2d 745). *Bily* was decided before *Nymark*, but not discussed therein.

#### ii. CHL's Allegedly Negligent Acts

Both limitations to the *Nymark* rule require the court to consider the particular conduct underlying the negligence claim. Plaintiff alleges three types of conduct here. Although the court engages in this fact-specific analysis, the court is mindful of fact that plaintiff has not provided a single example of a case in which a lender was found to owe a duty of care sounding in negligence to a borrower, nor has the court discovered any such authority under California law.

First, plaintiff argues that CHL was negligent in failing to provide the disclosures required by TILA and RESPA. FAC ¶¶ 62, 79, 86. As explained above, plaintiff has not adequately alleged a failure to provide any disclosure required by RESPA. Plaintiff has alleged plausible failures to provide disclosures required by TILA. CHL had a duty of care with regard to these disclosures. Although the disclosures are undoubtedly within the scope of a lender's normal activities, each of the *Biakanja* factors support finding a duty of care, and the policy concerns identified in *Bily* are inapplicable here. Plaintiff has adequately alleged a duty to make accurate disclosures, a breach of that duty, and damages.[28]

Second, plaintiff argues that CHL was negligent in "directing [plaintiff] into a loan transaction that [he] may not have otherwise qualified for by industry standards, resulting in excessive fees paid by the Plaintiff and payments in excess of Plaintiff['s] ability to pay." FAC ¶ 78. The California Court of Appeal has directly spoken to this issue, holding that a lender "owes no duty of care to the [borrower] in approving [a] loan." *Wagner*, 101 Cal.App.3d at 35, 161 Cal.Rptr. 516. *Wagner* held that as a matter of law, the lender did not owe a duty in negligence not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay. *Id. Wagner's* conclusion is consistent with the principles described above. Approving and providing a loan is within the scope of activities conventionally performed by a lender. Under *Bily's* second factor, borrowers "should be encouraged to rely on their own ability to protect themselves through their own prudence, diligence and contracting

---

**28.** Defendants have not addressed whether this claim is preempted and the court express-

es no opinion on that question.

power." *Roe*, 273 F.3d at 1198 (citing *Bily*, 3 Cal.4th at 399–405, 11 Cal.Rptr.2d 51, 834 P.2d 745). While borrowers' ability to protect themselves may depend on access to accurate information, a lender's duty to provide that information is distinct from a duty that would prohibit the lender from offering the loan at all.

From the conclusion that a lender does not owe a duty to the borrower in approving the loan it follows that the lender's failure to discover that the loan application inaccurately stated the borrower's income, without more, cannot breach a duty owed to the borrower in negligence. Here, plaintiff has alleged no consequence arising from the alleged failure.

 Plaintiff finally alleges that CHL was negligent in failing to maintain the original promissory note and in "failing to properly create original documents." FAC ¶ 79. Other than the allegations regarding disclosures, plaintiff has not identified any defect in the promissory note, deed of trust, or attached documents. As to preservation of the original promissory note, plaintiff has not alleged facts supporting the conclusion that any failure to maintain this note caused any harm to plaintiff.

### b. BAC

 Plaintiff's sole allegation supporting the claim for negligence as to BAC is that BAC was negligent in servicing the loan because the loan was "invalid," such that if BAC had exercised due care, BAC would not have attempted to collect payment under the loan. Plaintiff has not provided facts or a legal theory supporting the conclusion that the loan was void ab initio. The claim for negligence as to BAC is dismissed.

### c. MERS

With the possible exception of failure to maintain the original promissory note,

plaintiff's negligence claim does not allege any conduct that plaintiff attributes to MERS. FAC ¶¶ 79–80. As explained above, plaintiff has not alleged facts indicating that failure to maintain the note harmed plaintiff.

### d. ReconTrust

 Similarly, of the acts that FAC alleges constituted negligence, none are alleged to have been performed by ReconTrust. In opposing this motion, plaintiff separately argues that ReconTrust was negligent in executing a trustee's sale that was procedurally defective, and in issuing a second notice of trustee's sale after rescission of the first sale without also issuing a second notice of default. As described above, a second notice of default was not required. As to the defective trustee's sale, a trustee's actions in executing a non-judicial foreclosure are privileged communications under Cal. Civ.Code section 47, and as such will not support a tort claim other than one for malicious prosecution. Cal. Civ.Code §§ 47, 2924(d), *Kachlon v. Markowitz*, 168 Cal.App.4th 316, 333, 85 Cal.Rptr.3d 532 (2008); *see also Bouyer v. Countrywide Bank, FSB*, 2009 U.S. Dist. LEXIS 53940 (N.D. Cal. June 25, 2009).

### 7. Unfair Competition

California's Unfair Competition Law, Cal. Bus. & Prof.Code § 17200, ("UCL") proscribes "unlawful, unfair or fraudulent" business acts and practices. Plaintiff's sole allegation specifying the conduct underlying the UCL claim is that "Plaintiff is informed and believe that Defendants['] acts as alleged herein constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq." FAC ¶ 110.

 Thus, as with the fraud claim, plaintiff's UCL claim merely conclusorilly

alleges the barest elements of an UCL claim, and directs defendants to scour the remainder of the complaint to determine which, if any, of the allegations incorporated by reference provide the basis for this claim. The FAC therefore fails to provide notice of the basis for any claim arising out of unfair or fraudulent business practices.[29]

Plaintiff's UCL claim must therefore proceed, if at all, on the theory that defendants acted unlawfully. As discussed above, plaintiff has adequately alleged unlawful acts in that CHL violated TILA, that CHL and BAC violated the Rosenthal Act, and that CHL acted negligently. These allegations identify predicate acts supporting a UCL claim.

■ Plaintiff has also adequately alleged that MERS acted unlawfully by failing to register as a foreign corporation as required under Cal. Corp.Code § 2105(a). Nothing in the FAC indicates that this cursory allegation, made as part of plaintiff's statement of the parties, identifies conduct that is the basis for the UCL claim. Although the court cannot dismiss a complaint for mere unskillful pleading, the court also cannot endorse an approach that would require defendants to scour the complaint for every passing hint as to possible additional bases for claims. Plaintiff may amend his complaint to state this basis for his UCL claim, so that defendants may squarely answer it or seek to have it dismissed.

Defendants' motion to dismiss is therefore granted in part.

### 8. Breach of Contract

Plaintiff's claim for breach of contract is brought only as to defendants Ronnie D. Allen and CHL. A cause of action for breach of contract includes four elements: that a contract exists between the parties, that the plaintiff performed his contractual duties or was excused from nonperformance, that the defendant breached those contractual duties, and that plaintiff's damages were a result of the breach. *Reichert v. General Ins. Co.,* 68 Cal.2d 822, 830, 69 Cal.Rptr. 321, 442 P.2d 377 (1968); *First Commercial Mortgage Co. v. Reece,* 89 Cal. App.4th 731, 745, 108 Cal.Rptr.2d 23 (2001).

■ In plaintiff's opposition, he specifies that the contract underlying this claim, at least as it pertains to CHL, is the promissory note itself. Opp'n 22–23. Plaintiff alleges that CHL breached this contract by refusing to permit plaintiff to refinance. However, plaintiff's allegation that the note included a term promising plaintiff that he would be able to refinance is refuted by the note itself. Plaintiff also alleges that CHL breached the contract by issuing monthly bills for amounts in excess of what was identified in the contract. The exhibits do not refute this allegation. Plaintiff has therefore adequately alleged a breach.

In light of this allegation, the court cannot conclude that plaintiff's conceded nonperformance under the contract, FAC ¶ 45, is inexcusable. Accordingly, plaintiff's breach of contract claim may proceed on this theory.

### 9. Breach of The Implied Covenant of Good Faith and Fair Dealing

■ Plaintiff brings a claim for breach of the implied covenant of good faith and fair dealing as to all defendants. Such a claim is predicated upon the existence of an underlying contract. Plaintiff has not alleged that BAC, MERS, or ReconTrust

---

**29.** Above, the court noted that plaintiff might, in an amended complaint, argue that CHL is vicariously liable for affirmative fraud by the brokers. The court does not speculate as whether such a claim may be brought under the UCL.

entered into any contract with plaintiff, instead mistakenly arguing that no contract is required. The good faith claim is therefore dismissed as to these defendants.

Plaintiff has alleged a contract with CHL. Turning to CHL's alleged breach of the implied covenant, as with many of plaintiff's claims, the factual allegations underlying the good faith claim are largely conclusory.[30] These allegations do not name individual defendants, plaintiff implicitly concedes that many of the allegations regarding "defendants'" conduct are not pertinent to CHL.

 In his opposition, plaintiff argues that the good faith claim is based on "CHL [having] placed Plaintiff into a toxic loan with predatory terms." However, because a claim for breach of the duty of good faith is a claim that a defendant deprived plaintiff of benefits reasonably expected by the parties under the contract, entry into the contract itself cannot constitute a violation of the duty of good faith.

Accordingly, plaintiff's claim for breach of the implied covenant of good faith and fair dealing is dismissed as to all moving defendants.

### 10. Wrongful Foreclosure

Finally, plaintiff brings a claim for wrongful foreclosure, as to BAC and ReconTrust. Assuming without deciding that a claim for wrongful foreclosure may be brought when foreclosure has not yet occurred, plaintiff has failed to allege a violation of any of the requirements for a nonjudicial foreclosure. As explained above, defendants were not required to produce the promissory note, identify the holder of the promissory note, or re-issue a notice of default. Accordingly, this claim is dismissed.

### C. Motion to Strike

Defendants summarily argue that plaintiff's requests for punitive damages and for attorneys fees should be stricken. As to fees, defendants simply argue that because plaintiff's claims should all be dismissed, plaintiff will be unable to recover fees. Because the court denies the motion to dismiss in part, the factual predicate of this argument fails. As to punitive damages, defendants argue that all of plaintiff's allegations regarding oppression, fraud, or malice are conclusory and should be stricken under *Iqbal*, leaving the FAC without support for punitive damages. Mindful of the principle that motions to strike are disfavored, the court finds plaintiff's allegations adequate.

## IV. CONCLUSION

For the reasons stated above, defendants' motion to dismiss, Doc. No. 29, is GRANTED IN PART.

The court DISMISSES the following claims:

1. Third Claim, for negligence, as to defendants BAC, MERS, and ReconTrust

2. Fourth Claim, under RESPA, as to CHL, BAC, MERS, and ReconTrust.

3. Fifth Claim, for breach of fiduciary duty, as to CHL.

4. Sixth Claim, for fraud, as to CHL, BAC, MERS, and ReconTrust.

5. Seventh Claim, under the UCL, as to defendants BAC, MERS, and ReconTrust

6. Ninth Claim, for breach of the implied covenant of good faith and fair

---

**30.** For example, plaintiff alleges that defendants violated the duty of good faith by "performing the acts and failures to act alleged herein, and by failing to perform the duties specifically enumerated herein," FAC ¶ 123, and by "failing to comply with all applicable laws, including notice requirements, before foreclosure," FAC ¶ 124.

dealing, as to CHL, BAC, MERS, and ReconTrust.

7. Tenth Claim, for wrongful foreclosure, as to CHL, BAC, MERS, and ReconTrust.

All dismissals are without prejudice. Plaintiff is granted thirty (30) days to file an amended complaint. It appears to the court that the plaintiff may truthfully amend to cure defects on some of his claims. However, plaintiff is cautioned not to re-plead insufficient claims, or to falsely plead.

The court DENIES defendants' motion as to the following claims, insofar as they are premised on the theories found adequate in the analysis above:

1. First Claim, for civil damages under TILA

2. Second Claim, under the Rosenthal Act

3. Third Claim, for negligence, as to CHL only

4. Seventh Claim, under the UCL, as to CHL and BAC

6. Eighth Claim, for breach of contract

Defendants' motion to strike, also presented in Doc. No. 29, is DENIED.

IT IS SO ORDERED.