**John J. FALCOCCHIA and Rachael D. Falcocchia, Plaintiffs,**

**v.**

**SAXON MORTGAGE, INC., et al., Defendants.**

No. Civ. S–09–2700 LKK/GGH.

United States District Court, E.D. California.

May 27, 2010.

John J. Falcocchia, Law Offices of John J. Falcocchia, San Jose, CA, pro se.

William O. Davis, William O. Davis, Attorney at Law, Redding, CA, for Plaintiffs.

David Lee Chaffin, T. Robert Finlay, Wright, Finlay & Zak, LLP, Newport Beach, CA, for Defendants.

## ORDER

LAWRENCE K. KARLTON, Senior District Judge.

This case involves plaintiffs' mortgage. In a prior order, the court largely granted a motion to dismiss brought by defendants Saxon Mortgage, Inc., Saxon Mortgage Services, Inc., and Deutsche Bank Trust Company Americas. Plaintiffs were granted leave to amend and filed an amended complaint. Defendants have filed a renewed motion to dismiss, primarily arguing that plaintiffs have failed to cure the previously identified deficiencies. As explained below, the court largely agrees, though on more than one occasion, defendant failed to raise the court's previous determination.

### I. Standard for a Motion to Dismiss

A Fed.R.Civ.P. 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. Under Fed.R.Civ.P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation and modification omitted). To meet this requirement, the complaint must be supported by factual allegations. *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. *Id.* at 1949–50. *Iqbal* and *Twombly* therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." *Id.*; *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

"Plausibility," as it is used in *Twombly* and *Iqbal*, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988).

Here, defendants ask the court to look beyond the complaint's allegations and consider various exhibits. A court may consider judicially noticeable evidence

and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without transforming a motion to dismiss into a motion for summary judgment. *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994), *overruled on other grounds by Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1124 (9th Cir.2002). In this case the court takes judicial notice of the various recorded documents under Fed.R.Evid. 201. Where these documents contradict the complaint's allegations the court does not accept the allegations as true. *See Mullis v. United States Bankr. Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987), *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir. 1987). The various other documents, which defendants ask the court to consider under *Branch,* are not necessary to the court's resolution of this motion. The court therefore disregards them.

## II. BACKGROUND

### A. Procedural History

Plaintiffs filed suit in state court on June 1, 2009, asserting solely state law claims. Plaintiffs concurrently applied for a temporary restraining order. The state court issued a TRO on June 22, 2009 preventing defendants from assigning or transferring the subject real property pending this litigation.

On August 28, 2009, plaintiffs amended their state court complaint, adding claims under the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA") and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"). The amended complaint also asserted seven state law causes of action, for breach of contract, negligence, breach of the implied covenant of good faith and fair dealing, violation of Cal. Bus. & Prof.Code § 17200, violations of Cal. Civ.Code §§ 2924b and 2924f, wrongful foreclosure, and violation of the California Rosenthal Act.

Defendants Saxon Mortgage, Inc., Saxon Mortgage Services, Inc., and Deutsche Bank Trust Company Americas (hereinafter "defendants") timely removed to federal court. A fourth party, Old Republic National Title Insurance Co., is named in the complaint, but all parties agree that Old Republic is merely a nominal party with no possible liability. Defendants then moved to dismiss.

In an order filed February 12, 2010, the court denied the motion to dismiss as to plaintiffs' RESPA claim and plaintiffs' unfair competition claim insofar as the latter was predicated on a violation of RESPA. *Falcocchia v. Saxon Mortg., Inc.,* 709 F.Supp.2d 860, 2010 WL 582059, 2010 U.S. Dist. LEXIS 20536 (E.D.Cal.2010). The court otherwise granted the motion.

Plaintiffs filed an amended complaint on March 5, 2010. Although the court had previously referred to the August 28, 2009 complaint as the "first amended complaint," plaintiffs confusingly labeled the March 5 complaint as the "first amended complaint," perhaps because it was the first amendment to be filed in federal court. The March 5 complaint omits the Rosenthal Act claim, but re-pleads all other claims.

Defendants again move to dismiss all claims. Their motion follows plaintiffs' labeling. The court therefore again refers to the operative complaint as the "first amended complaint" or "FAC" despite the resulting potential for confusion.

### B. Factual Background [1]

#### 1. The Loan at Issue

On or about July 12, 2006, Greg Roh (who is not party to this suit) approached

---

1. These facts are taken from the allegations in the complaint filed March 5, 2010 (the "FAC") unless otherwise specified. The alle-

plaintiffs soliciting refinancing of a loan currently secured by plaintiffs' property in Yuba City, California. FAC ¶ 30. Roh, a mortgage broker, informed plaintiffs that a mortgage from defendants Saxon Mortgage and Saxon Mortgage Services would give them the "best deal" and "best interest rates" available on the market. *Id.*

Plaintiffs decided to borrow $408,000. *Id.*, Defs.' Request for Judicial Notice filed April 9, 2010 ("RFJN") Ex. 2. This amount included the $301,750.00 balance on plaintiffs' existing home loan and roughly an additional $100,000. Def.'s RFJN Ex. 1. On the day Roh approached plaintiffs, July 12, 2006, plaintiffs signed a deed of trust offering their Yuba City home as security for this loan. FAC ¶ 35. This deed of trust was properly recorded. FAC ¶ 36. The deed of trust identifies the plaintiffs as borrowers, Saxon Mortgage as lender, and First American Title as trustee. Defs.' RFJN Ex. 2, *see also* FAC ¶ 52 (identifying Saxon Mortgage as the lender). It appears that Saxon Mortgage Services was the servicer of the loan.

Plaintiffs argue that the loan transaction was procedurally defective, in that plaintiffs did not receive (1) signed loan documents at the time of closing or within a reasonable amount of time after signing, FAC ¶ 32, (2) disclosure of "amount financed" and "finance charge," FAC ¶ 54 and (3) a completed notice of right to cancel indicating the date that the right expires, FAC ¶ 32. Plaintiff further argue that they did not receive the loan docu-

ments prior to closing (although it is unclear when that would have been) or time to review these documents at closing. FAC ¶ 32.

In addition to these alleged omissions, plaintiffs allege that Roh affirmatively misrepresented plaintiffs' income on the loan documents and that Roh similarly misinformed plaintiffs that they would have an option to refinance the loan if it ever became unaffordable. FAC ¶ 31.

### 2. Events Subsequent to Refinancing

Plaintiffs assert that "within six months of executing the promissory note, defendants . . . adjusted the interest rate . . . to over 10.175%." Pls.' Opp'n at 3.[2]

Defendants contend that plaintiffs first defaulted on the loan at around that time, on January 1, 2007. Plaintiffs concede that they defaulted, although it is unclear whether plaintiffs agree with this date.[3] Defendant issued three notices of default, each followed by a notice of trustee's sale. The first two were rescinded, and are not at issue here. Plaintiffs represent that during this time, they were in negotiations with defendants Saxon Mortgage and Saxon Mortgage Services.[4]

During this time-on April 18, 2007–Saxon Mortgage assigned its beneficial interest under the promissory note and deed of trust to defendant Deutsche Bank Trust Company Americas. Defs.' RFJN Ex. 4 (recorded notice of assignment). Pursuant to this assignment, Saxon Mortgage Ser-

gations are taken as true for purposes of this motion only.

2. Although this allegation does not appear in the FAC, the court includes it here because it pertains to plaintiffs' ability to show equitable tolling or estoppel.

3. Defendants cite a notice of default recorded on April 23, 2007 in purported support of the Jan. 1, 2007 date. Defs.' RFJN Ex. 3. This

notice of default asserts that plaintiffs were in default at that time. While the court takes judicial notice of the fact that the document was filed and of its contents, this notice does not extend to the purported truth of representations contained therein.

4. The court notes that once Saxon Mortgage assigned its interest in the deed of trust, it is not clear what authority Saxon Mortgage would have had to conduct such negotiations.

vicing remained the "attorney-in-fact" for the beneficiary, which the court understands to mean that Saxon Mortgage Servicing continued to service the loan. *Id.*

Well after Saxon Mortgage has assigned its interest, on May 13, 2008, the third notice of default was recorded. FAC ¶ 38, Defs.' RFJN Ex. 10.[5] This notice of default was issued by Old Republic Default Management Services, who had not previously been involved in the loan. FAC ¶ 38, Defs.' RFJN Ex. 10. A year later, on May 14, 2009, Old Republic recorded a document substituting Old Republic for First American Title as trustee. Defs.' RFJN Ex. 11.[6] Old Republic also recorded a third notice of trustee's sale. Defs.' RFJN Ex. 12. The trustee's sale was set for June 2, 2009. *Id.,* FAC ¶ 41.

Plaintiffs argue that May 13, 2008 notice of default and subsequent notice of trustee sale should have been mailed to plaintiffs' "legal mailing address," but that they were not, despite defendants' knowledge of this address. FAC ¶¶ 39, 40, 43.

After receiving notice of the scheduled June 2, 2009 trustee's sale, plaintiffs sent letters to defendants stating plaintiffs' intent to seek a temporary restraining order to enjoin the foreclosure sale, demanding immediate cancellation of the foreclosure sale, and demanding that defendant Old Republic Default Management Services immediately stay all further action and comply with California Civil Code section 2924. FAC ¶ 45. Defendants did not respond.

Plaintiffs also sent a separate letter to Saxon Mortgage and Saxon Mortgage Services which "demand[ed] to cancel the foreclosure sale under the ... Deed of Trust [and] to rescind the loan for various violations under [TILA]" FAC ¶ 46. Plaintiffs assert that this letter constituted a "qualified written request" ("QWR") under RESPA. *Id.* Although the FAC does not specify when this letter was sent, plaintiff's opposition states that it was sent March 26, 2008. Opp'n, 3.[7] Saxon Mortgage and Saxon Mortgage Services did not respond. FAC ¶ 47

After the third notice of trustee sale was recorded on May 14, 2009, defendants refused to postpone this sale. On June 1, 2009, plaintiffs filed a complaint in state court.

### III. ANALYSIS

The operative complaint presents federal claims under TILA and RESPA. The court denies the motion to dismiss as to the TILA damages claim for failure to respond to a notice of rescission. Because a federal claim remains, the court continues to exercise supplemental jurisdiction over the six state law claims pursuant to 28 U.S.C. § 1367.

### A. TILA

Plaintiffs bring claims for civil damages and for rescission under TILA. As the court previously explained, these two remedies are governed by distinct statutory frameworks.[8]

5. Defendants state that this notice was recorded on May 14, 2009.

6. The substitution of trustee bears a notarized signature dated Jan. 21, 2009, but the document was apparently recorded on the above date.

7. Plaintiffs confusingly allege that this letter was sent prior to the recording of the third

notices of default and trustee's sale, but plaintiffs also imply that this letter was sent in response to these notices. *Compare* FAC ¶ 46 *with* Opp'n, 3.

8. The court must confess that it is difficult to rationalize the court's rulings since, judging by the parties' previous conduct, it is not at all clear that they bothered to read the court's previous order.

### 1. Rescission

■ TILA provides a right to rescind a loan. 15 U.S.C. § 1635(a)-(b). A borrower may rescind merely because of "buyer's remorse." *Hefferman v. Bitton,* 882 F.2d 379, 383 (9th Cir.1989). Thus, rescission need not be predicated on any mistake, misunderstanding, or misconduct.

Ordinarily a borrower must rescind within three days of the initial transaction. Where the borrower does not receive notice of the right to cancel, however, the period for rescission extends to three years. 15 U.S.C. § 1635(f), *Hefferman,* 882 F.2d at 383. For purposes of this motion, defendants concede that this notice was not provided, such that the three year period applies here. Def.'s Reply at 5. The parties agree that this period expired on July 12, 2009.

The court previously held that this period was a jurisdictional statute of repose to which neither tolling nor estoppel could apply. Order filed Feb. 12, 2010, 709 F.Supp.2d at 867–68, (citing *Miguel v. Country Funding Corp.,* 309 F.3d 1161, 1164 (9th Cir.2002) and *Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 412, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998)). Plaintiffs sought to rescind their loan prior to July 12, 2009, but they did not bring a judicial action seeking rescission until after that time. This court held that the rescission claim was therefore untimely, although the court noted that plaintiffs could perhaps assert a civil damages claim for failure to respond to the initial rescission notice. *Id.* at 868.

Despite the prior ruling, plaintiffs have re-pled their TILA rescission claim, but plaintiffs have not alleged any additional facts that would cause the claim to fare better this time around. Even more curiously, although defendants previously succeeded by arguing that this claim was untimely, defendants make no such assertion in their present motion.

Seeing no reason to revisit the prior decision, the court hold that the TILA rescission claim is untimely. Because plaintiffs have previously been warned about this defect and failed to remedy it, dismissal of this claim is with prejudice.

### 2. Civil Damages

■ Claims for damages under TILA are governed by a separate framework. Plaintiffs assert four theories of TILA liability. Defendants argue that these theories are untimely and meritless. As to timeliness, as explained in the prior order, TILA provides a one year statute of limitations for civil damages claims, although this period may be subject to equitable tolling or estoppel. 15 U.S.C. § 1640(e), *King v. California,* 784 F.2d 910, 914 (9th Cir.1986). When a defendant files a Fed. R.Civ.P. 12(b)(6) motion to dismiss a claim as untimely but the applicable statute of limitations is one subject to tolling or estoppel, the court must deny the motion where "the complaint, liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the potential applicability of the equitable tolling doctrine." *Cervantes v. City of San Diego,* 5 F.3d 1273, 1277 (9th Cir.1993).

With this background, the court discusses the four theories individually.

#### a. TILA Damages Claim for Failure to Respond to Rescission Notice

Plaintiffs allege that they sent a timely notice of rescission and that defendants improperly failed to respond to this notice. FAC ¶ 111; *see also* 15 U.S.C. §§ 1635(g), 1640(a). Although a judicial claim for rescission must be filed within three years of the initial transaction, a damages claim for failure to respond to a rescission notice can be filed within one year of the alleged failure, regardless of whether this falls outside of the three year period for rescission itself. Order, 709 F.Supp.2d at 868. It appears that at least one request to

rescind was sent in May of 2009, three months before plaintiffs first alleged a TILA violation and less than a year before the present complaint was filed. Accordingly, this claim is not time barred.

Defendants raise two other challenges to this theory of liability. First, they argue that the exhibits before the court demonstrate that plaintiffs received all required disclosures *except* the notice of the right to rescind. Reply at 5. Defendants contend that failure to inform plaintiffs of the right to rescind merely extended the "statute of limitations" in which plaintiffs could seek rescission on the basis of some other misconduct. Defendants mischaracterize TILA. As explained above, section 1635(a) is a "buyer's remorse" provision, such that rescission need not be predicated on a TILA violation.[9]

■ Defendants' second argument is that this claim fails because plaintiffs have failed to allege an ability to tender the loan proceeds. Under TILA's default rescission procedure, a borrower must tender the loan proceeds, minus certain amounts, *after* the lender has cancelled any security interest and returned any money and property (such as earnest money) to the borrower. 15 U.S.C. § 1635(b). TILA grants courts authority to modify this procedure, and the Ninth Circuit has held that courts generally should require tender as a prerequisite to rescission. *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1172 (9th Cir.2003). Defendant has identified no authority, however, suggesting that the initial notice of rescission was required to allege an ability to tender the loan pro-

ceeds or that a borrower was free to ignore an otherwise proper rescission notice lacking such an allegation. Indeed, this court has held that a complaint in a judicial action for rescission need not contain any such allegation, because the decision under *Yamamoto* of when to require tender is better made at the time of summary judgment. *Baldain v. Am. Home Mortg. Servicing, Inc.*, No. CIV. S–09–0931, 2010 WL 56143, *10–11, 2010 U.S. Dist. LEXIS 5671, *32 (E.D.Cal. Jan. 5, 2010). Accordingly, the fact that plaintiffs have not alleged an ability to tender the loan proceeds does not bar plaintiffs from bringing a damages claim for failure to respond to the notice of rescission.[10]

### b. TILA Damages Claims Arising from The Initial Transaction

Plaintiffs' TILA damages claim also asserts three theories of liability arising from the initial transaction. Only the first theory was raised in plaintiffs' prior complaint. Plaintiffs allege that defendants failed to make disclosures or provide documents at the loan's origination. The limitations period for a claim based on these omissions would normally have expired on July 12, 2007. Plaintiffs first filed a TILA damages claim on August 28, 2009. In the prior order, the court held that because plaintiffs were necessarily able to determine which documents they did and did not receive, plaintiffs had not shown a possibility of equitable tolling or estoppel. Order, 709 F.Supp.2d at 866. The claim was therefore untimely. *Id.* In the operative complaint plaintiffs re-plead this claim,[11] but provide no added allegations or

9. The court does not decide whether these other disclosures were in fact made.

10. The parties have not addressed whether a lender is obliged to respond a notice of rescission even if the borrower does not have a right to rescind. Because the court holds that plaintiffs have alleged facts supporting a right to rescind, the court does not reach this issue.

11. Plaintiffs allege that defendants violated TILA by "failing to provide the required disclosures ... failing to make required disclosures clearly and conspicuously in writing; failing to timely deliver ... certain notices required by statute; placing terms prohibited by statute into the transaction; ... failing to disclose all finance charge details and the annual percentage rate based upon properly

theory as to why plaintiffs were unaware of these failures at the time of the initial transaction or as to plaintiffs' inability to bring suit at that time. For the reasons explained in the prior order, the claim is untimely insofar as it is based on these allegations.

■ Second, plaintiffs now allege that defendants "provid[ed] inaccurate information ... relating to the terms of the loan [and] ... misrepresent[ed] ... finance charge details and the annual percentage rate." FAC ¶ 109. This court has previously held that allegations of inaccurate information may demonstrate a *possibility* of tolling for the period of time in which the borrower could not have discovered the inaccuracy despite the exercise of reasonable diligence, and thereby defeat a motion to dismiss. *See Champlaie v. BAC Home Loans Servicing,* LP, No. S–09–1316, 706 F.Supp.2d 1029, 1053, 2009 U.S. Dist. LEXIS 102285, *52–*53, 2009 WL 3429622, *17 (E.D.Cal. Oct. 22, 2009). Here, however, any inaccuracies excuse at most six months of delay, which is insufficient to render the claim timely. Plaintiffs assert that the annual percentage rate unexpectedly increased within six months of the initial transaction. Plaintiffs were on notice of the alleged misrepresentations at that time. Plaintiffs have not demonstrated a "possibility" that the claim based on such misrepresentation filed two and a half years later was timely.

■ Third, plaintiffs allege that defendants extended credit to plaintiffs without regard to plaintiffs' ability to pay, pursuant to a broader pattern or practice. FAC ¶ 110, *see also* 15 U.S.C. § 1639(h). It is at least possible that plaintiffs could not discover the basis for this claim until plaintiffs learned the terms of the loan they received and thus the size of plaintiffs' obligation. As noted in the previous paragraph, however, at the very least, plaintiffs were obliged to diligently investigate these terms once their interest rate spiked around early 2007. Although plaintiffs might not have known all the information necessary to ultimately prove their claim at that time, plaintiffs' own assertions demonstrate that they had "the information necessary to bring suit." *Lien Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 1004 (9th Cir.2006). As such, plaintiffs have not shown a possibility of equitable tolling for a TILA claim based on lending without regard to ability to repay. *Id.*

Accordingly, plaintiffs' TILA claim is dismissed except insofar as it seeks civil damages for defendants' failure to respond to a notice of rescission. This is plaintiffs' second attempt to plead this claim, yet plaintiffs have failed to cure the previously identified defects. To the extent that this claim is dismissed, dismissal is with prejudice.

**B. Real Estate Settlement Procedures Act**

■ Plaintiffs claim that Saxon Mortgage and Saxon Mortgage Services violated RESPA by failing to respond to a qualified written request as required by 12 U.S.C. § 2605(e)(2). FAC ¶ 118. Plaintiffs further allege that defendants have a pattern and practice of such violations. FAC ¶ 119. Defendants previously argued that this claim was untimely because it was brought more than three years beyond the initial transaction. The court held that the statute of limitations runs from the time defendants failed to respond to the QWR and that the claim was therefore brought within the limitations period. Order, 709 F.Supp.2d at 868–69.

Defendants now argue that the RESPA claim should be dismissed because plain-

calculated and disclosed finance charges and amounts financed." FAC ¶ 109.

tiffs have not alleged facts sufficient to support the conclusion that plaintiffs sent a QWR to defendants. RESPA defines a QWR as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Plaintiffs allege that they sent a "QWR" to defendants that "demand[ed] to cancel the foreclosure sale under the ... Deed of Trust [and] to rescind the loan for various violations under [TILA]." FAC ¶ 46. Plaintiffs make no other allegations regarding the content of this purported QWR, nor have plaintiffs provided a copy of the letter. Plaintiffs have not alleged that they ever sent a request for information. Nor do any of the alleged TILA violations amount to a statement that "the account [was] in error." Accordingly, this claim is dismissed. Because this defect was not previously addressed by the court, dismissal is without prejudice.

## C. Contract Claims

Plaintiffs' first cause of action is labeled as an action for breach of contract or for rescission of contract.[12] The court discuss-

es these two theories separately. Plaintiffs also bring a claim for breach of the implied covenant of good faith and fair dealing.

### 1. Breach of Contract

■ Plaintiffs allege that the Saxon defendants, acting through the mortgage broker Roh, contracted to "assist Plaintiffs in obtaining a mortgage loan and to provide Plaintiffs with a loan commitment under various said affordable terms which were to be set out in a promissory note." FAC ¶ 65. "Plaintiffs agreed to pay mortgage Broker Greg Roh a commission for his services and pay [the Saxon defendants] substantial loan origination fees and commissions for their services." Id.

Defendants allegedly breached this contract by "making false representations ... regarding material facts relating to mortgage payments, the availability of refinancing, and Plaintiffs' qualification for the loan, by their failure to exercise reasonable efforts and due diligence as promised; and, by failing to secure a loan with the promised payment and interest rate." FAC ¶ 66.

Defendants raise two arguments for dismissal of this claim. First, they argue that this claim alleges an oral contract concerning property, whereas such contracts must be in writing.[13] Insofar as plaintiffs merely allege a contract regarding future negotiations, defendants have not met their burden of demonstrating

---

**12.** In the prior motion, plaintiffs stated their non-opposition to dismissal of this claim and did not request leave to amend. Absent such a request, the court dismissed this claim with prejudice. Plaintiff was not warned of this possibility beforehand. Insofar as plaintiff has sought to replead this claim, the conclusion that plaintiff had abandoned it was premature. Defendants have not argued that the previous dismissal with prejudice prohibits plaintiffs from repleading this claim. Plaintiff affirmatively opposes dismissal in the instant motion.

**13.** Defendants actually argue that the court previously dismissed this claim on this ground. The court dismissed the claim because "Plaintiffs concede that the oral contract claim must be dismissed," without discussing the merits of the issue. Order, 709 F.Supp.2d at 872.

that this contract falls within the statute of frauds. Second, they argue that this claim is actually a claim for breach of fiduciary duty and that such a claim cannot lie against a lender. Defendants' characterization of the claim is not supported by the allegations in the complaint.[14]

Having rejected defendants' arguments, the court acknowledges that plaintiffs may be unable to show that any agreement prior to the loan itself existed, that the Saxon defendants were party to this agreement, that the Saxon defendants had any obligations under this agreement (as opposed to their obligations under the actual loan), or that the Saxon defendants breached any such obligations. Because defendants did not raise these issues the court does not address them.

Accordingly, the motion to dismiss the breach of contract claim is denied.

## 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

It is unclear whether plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is predicated on the alleged initial contract discussed above or instead on the promissory note and loan itself. Plaintiffs treat this claim as a catch-all for all alleged wrongdoing by defendants, arguing that defendants breached this duty by, in plaintiffs' words:

a. Failing to pay at least as much regard to Plaintiffs' interests as to Defendants' interests

b. Failing to disclose to Plaintiffs the true nature of the loan that is the subject of this action;

c. Failing to give Plaintiffs the requisite notice and disclosures.

d. Directing Plaintiffs into a toxic loan.

e. Depriving Plaintiffs of the promised payment and interest rate on the loan;

f. Initiating foreclosure proceedings on the subject property although they did not have the right to do so;

g. Failing to give proper legal notice before commencing disclosure;

h. and, authorizing the reporting to various credit bureaus wrongfully known that such wrongful reporting would cause derogatory information to ruin the Plaintiffs' credit;

[i]. "[falsely representing that plaintiffs could get the 'best deal' " and "the best interest rates."]

[j]. "failing to comply with all applicable laws."

FAC ¶¶ 78–79.

■ Insofar as plaintiffs claim a *tortious* breach of the implied covenant, the claim fails because plaintiffs have not alleged the requisite special relationship, such as that between an insurer and the insured. *Kim v. Sumitomo Bank*, 17 Cal. App.4th 974, 979, 21 Cal.Rptr.2d 834 (1993) (citing *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1399, n. 25, 272 Cal.Rptr. 387 (1990)). Absent such a relationship, the implied covenant did not oblige defendants to "pay at least as much regard to Plaintiffs' interests as to Defendants' interests." Because a special relationship is only necessary for enforcement of such an obligation or for recovery of damages, the absence of a special relationship is irrelevant to the remaining allegations insofar as they seek contract damages.

---

14. Confusingly, plaintiffs' opposition does not argue that defendants have mischaracterized this claim. Plaintiffs instead argue that defendants did owe fiduciary duty. Opp'n 17. The court does not reach this contention. If plaintiffs wish to state a claim for breach of fiduciary duty, plaintiffs should seek leave to amend to do so. Defendants' present opposition, however, identifies many of the difficulties facing such a claim.

Defendants alternatively argue that this claim fails because the covenant is predicated on the existence of an oral agreement prior to the loan itself. As explained above, the court does not dismiss the allegation of such an agreement. Moreover, it appears that the loan itself is a contract that carries with it an implied covenant.

Again, having rejected the only arguments raised by defendants, the court denies the motion to dismiss this claim without discussing whether the claim is otherwise proper.

### 3. Contractual Rescission

 Plaintiffs alternatively allege that "no contract existed between Plaintiffs and [the Saxon defendants] because of mutual mistake relating to the basic or material contractual terms." FAC ¶ 69. Plaintiffs apparently seek to void the loan itself, rather than any preliminary contract.

 Defendants' sole argument for dismissal of this claim is that rescission under state law requires tender of the benefits the rescinding party has received under the contract, but that plaintiffs have not alleged an ability to make tender. Under California law a credible tender offer is a prerequisite to a rescission claim. *Yulaeva v. Greenpoint Mortg. Funding, Inc.*, 2009 WL 2880393, *8, 2009 U.S. Dist. LEXIS 79094, *23 (E.D.Cal. Sept. 3, 2009) (Karlton, J.). In the TILA context, the undersigned has explained that the tender may in some circumstances that result may be made possible by refinancing of the loan, which may in turn only be possible once rescission has occurred. *Baldain v. Am. Home Mortg. Servicing, Inc.*, 2010 WL 56143, *9–*11, 2010 U.S. Dist. LEXIS 5671, *28–*32 (E.D.Cal. Jan. 5, 2010). It appears that such refinancing may be part of an offer to tender under California law.

Insofar as plaintiffs have stated their intent to tender, defendants will need to wait until summary judgment to challenge whether plaintiffs have any evidence to demonstrate the credibility of this offer. It does not appear that plaintiffs must demonstrate immediate ability to tender, whether through refinancing or otherwise, at the pleading stage.[15]

### D. Negligence

Plaintiffs' prior complaint alleged that defendants were negligent in "(1) directing plaintiffs into a loan they were not qualified for, ... and (2) taking payments to which they were not entitled, charging fees they were not entitled to charge and making or otherwise authorizing reporting to various credit bureaus wrongfully." Order, 709 F.Supp.2d at 869 (modifications omitted). The court dismissed this claim in part on the ground that defendants did not owe an applicable duty to plaintiffs and in part because plaintiffs had not alleged a breach of any applicable duty. *Id.* at 869–70.

Plaintiffs' current complaint · abandons these theories of negligence, and is instead predicated solely on the failure to make the disclosures required by TILA. FAC ¶¶ 72–73. This court has previously held that as a matter of state law, failure to make these disclosures *may* support a claim for negligence. *Champlaie*, 706 F.Supp.2d at 1061–62, 2009 WL 3429622, *24, 2009 U.S. Dist. LEXIS 102285, *75.

Defendants argue that this claim should be dismissed as untimely. Without citation to authority, defendants assert that "Because Plaintiffs base this claim on requirements under federal substantive law, namely TILA, it follows that the Statute of

---

**15.** Of course, for the reasons stated in *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167 (9th Cir.2003) the court will not rescind the contract on the mere *hope* that plaintiffs will be able to make tender, through refinancing or otherwise.

Limitations from TILA controls." Mem. at 16.

■■■ The issue is not as straightforward as defendants assume. The Ninth Circuit has held that states' ability to effectively extend federal statutes of limitations is a question of preemption. *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir.2008). TILA itself does not preempt plaintiffs' negligence claim, because TILA contains a broad savings clause. 15 U.S.C. § 1610(b), *Silvas*, 514 F.3d at 1007. TILA's savings clause nonetheless does not limit the preemptive effect of other federal law. *Silvas*, 514 F.3d at 1007. To the contrary, *Silvas* held that a regulation issued by the Office of Thrift Supervision pursuant to the Home Owners' Loan Act ("HOLA"), 12 C.F.R. § 560.2, may preempt state law claims predicated on TILA violations. *Id.* at 1004; *see also Casey v. FDIC*, 583 F.3d 586, 593 (8th Cir.2009), *State Farm Bank, FSB v. Reardon*, 539 F.3d 336, 344 (6th Cir.2008), *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 182–84 (2d Cir.2005).

The OTS regulation at issue in *Silvas* "occupies the entire field of lending regulation for *federal savings associations*." 12 C.F.R. § 560.2 (emphasis added). Such associations are those chartered under HOLA § 5(*o*), 12 U.S.C. § 1464(*o*). *See* 12 C.F.R. §§ 541.2, 541.11. A defendant must demonstrate that it is such an entity before the defendant may benefit from the preemption defense recognized by *Silvas*. *Yang v. Home Loan Funding, Inc.*, No. CV F 07–1454, 2010 WL 670958, *7–*9, 2010 U.S. Dist. LEXIS 21837, *20–*24 (E.D.Cal. Feb. 18, 2010) (Ishii, J.) (denying a motion to dismiss in part because, in essence, defendant had not shown that it was a federal savings association), *Ibarra v. Loan City*, No. 09–CV–02228, 2010 WL 415284, *4–*5, 2010 U.S. Dist. LEXIS

6583, *13 (S.D.Cal. Jan. 27, 2010) (beginning the preemption analysis by noting that defendant had shown that it was a federally regulated savings association).

Here, defendants have not offered any argument or evidence as to the threshold question of whether they are federal savings associations. Nor have defendants raised any other arguments for dismissal of this claim. Because defendants bear all applicable burdens on their motion to dismiss, the motion is denied as to plaintiffs' negligence claim.[16]

### E. Violations of California Civil Code §§ 2924b and 2924f

Plaintiffs' fifth cause of action argues that all defendants violated California Civil Code sections 2924b and 2924f by failing to send the notices of default, trustee's sale, and substitution of trustee to the plaintiffs' "legal mailing address." FAC ¶¶ 87–90. The court dismissed this claim because plaintiffs had not alleged that they failed to receive these documents or that such receipt was delayed; thus, it appeared that any violation was harmless. Order, 709 F.Supp.2d at 870.

■■■ Plaintiffs now allege that they "failed to receive the notices in a timely manner and such failure ... caused an undue delay ... whereby Plaintiffs lost an opportunity to have initially taken preventive action to avoid the foreclosure sale." FAC ¶ 90. Defendants argue that this allegation is inadequate in that it fails to specify what action plaintiffs would have taken. Defendants make no other argument for dismissal of this claim.

It does not appear that such allegations are required in the complaint itself. Plaintiffs respond, in their opposition memorandum, that such actions "would have includ-

---

16. The court does not decide whether, if defendants had shown that they were federal savings associations, the negligence claim would be preempted.

ed an attempted loan refinance at a lower interest rate, a short sale, or a loan modification with the existing Defendant lenders." Opp'n at 22. It appears unlikely that defendants would have agreed to refinance or modify the loan had only plaintiffs made such request a few days earlier. At the very least, however, it is a reasonable inference that a short sale or refinancing through another lender was an available "preventative action" that would have been facilitated by earlier receipt of notice. Such a reasonable inference suffices at this stage of the proceedings.

## F. Wrongful Foreclosure

Plaintiffs allege that the threatened foreclosure is wrongful because (1) defendant Old Republic National Title Insurance Co., who recorded the notices of default and trustee's sale, was not authorized to act on defendants' behalf, FAC ¶ 98; (2) the notices were not properly sent to plaintiffs, FAC ¶ 98 and FAC ¶¶ 87–90; (3) plaintiffs' notice of rescission deprived defendants of the right to foreclose, FAC ¶¶ 99–100; (4) defendants failed to respond to the qualified written request under RESPA, FAC ¶¶ 99–100; and (5) "Defendants have failed to suspend the foreclosure action to allow for consideration of other options," FAC ¶ 102.

■■■ Defendants make two arguments for dismissal. First, they argue that because the RESPA claim fails, failure to respond to the QWR cannot support a claim for wrongful foreclosure. The court agrees. Moreover, as the prior order explained, because RESPA does not provide for injunctive relief, RESPA cannot serve as the basis for a wrongful foreclosure

claim. Order, 709 F.Supp.2d at 871. Second, defendants argue that plaintiffs' allegation regarding consideration of alternative foreclosure options is contradicted by plaintiff John Falcocchia's own declaration submitted to state court prior to removal. He declares "since May, 2008[ ] I have been working with the Loss Mitigation Department at Saxon Mortgage Incorp. and have attempted to obtain a loan modification with Saxon and defer outstanding interest payments owed so as to avoid the loss of the subject property." June 1, 2009 Decl. of John J. Falcocchia ISO Ex Parte Application for TRO, ¶ 4. In opposing this motion, plaintiffs do not dispute that such negotiations occurred and accounted for the year delay between the third notice of default and the third notice of trustee's sale. Thus, this theory fails.

Although the court dismisses these two bases for the wrongful foreclosure claim, defendants have not addressed the other three alleged bases. Accordingly, this claim survives in part.

## G. Violations of California Business and Professions Code Sec. 17200

■■■ California's Unfair Competition Law, Cal. Bus. & Prof.Code § 17200, ("UCL") proscribes "unlawful, unfair or fraudulent" business acts and practices. "Unlawful" conduct is that prohibited by other law. Here, the court denies the motion to dismiss as to various other claims which provide the requisite predicate unlawful conduct.[17] Because the claim survives in this regard and in light of the inadequacy of the parties' briefing, the court does not decide whether plaintiffs

---

17. Although the court denies defendants' motion as to the contract and good faith claims, contract claims cannot constitute "unlawful" conduct for purposes of an unfair competition claim. *See Boland, Inc. v. Rolf C. Hagen (USA) Corp.,* 685 F.Supp.2d 1094, 1109–10 (E.D.Cal.2010) (citing *Puentes v. Wells Fargo*

*Home Mortgage, Inc.,* 160 Cal.App.4th 638, 645, 72 Cal.Rptr.3d 903 (2008) and *Smith v. Wells Fargo Bank, N.A.,* 135 Cal.App.4th 1463, 1484, 38 Cal.Rptr.3d 653 (2005)). The remaining surviving claims provide the predicate unlawful activity.

have also sufficiently alleged claims for unfair or fraudulent conduct.

## IV. Conclusion

For the reasons stated above, defendants' motion to dismiss (Dkt. No. 26) is GRANTED IN PART. The court ORDERS as follows:

1. Plaintiffs' TILA claim is DISMISSED WITH PREJUDICE except insofar as this claim seeks damages for the failure to respond to notice of rescission.

2. Plaintiffs' RESPA claim is DISMISSED WITHOUT PREJUDICE.

3. Plaintiffs' wrongful foreclosure claim is DISMISSED WITH PREJUDICE solely insofar as it is predicated on violation of RESPA or the allegation that defendants failed to suspend foreclosure activities to allow negotiation of a loan modification.

4. Defendants' motion to dismiss is otherwise DENIED.

Plaintiffs are granted 21 days to file an amended complaint seeking to cure the above identified defects with plaintiffs' RESPA claim. Should plaintiffs seek to amend their complaint for any other purposes, plaintiffs must move for leave to amend under Fed.R.Civ.P. 15 and 16. *See* Scheduling Order filed Jan. 11, 2010.

Both parties are warned that evidence that a party failed to read this order will result in sanctions.

IT IS SO ORDERED.